**Charlotte MAHOWALD, Widow and Personal Representative of Robert Mahowald's Estate, on behalf of herself and all others similarly situated, Appellants–Plaintiffs,**

v.

**STATE of Indiana, Appellee–Defendant.**

No. 49A02–9808–CV–693.

Court of Appeals of Indiana.

Nov. 16, 1999.

John G. Deckard, Indianapolis, Indiana, Attorney for Appellants.

Jeffrey A. Modisett, Attorney General of Indiana, Geoffrey Slaughter, Special Counsel to the Attorney General, Cindy M. Lott, Chief Counsel, Special Services Division, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Plaintiff–Appellant, Robert Mahowald[1] (Mahowald), appeals the trial court's grant of summary judgment in favor of the Defendant–Appellee, State of Indiana.

We affirm.[2]

### ISSUE

Mahowald presents one issue for our review, which we restate as follows: whether the trial court erred in determining that the Legislators' Retirement System was constitutional under Article I, § 23 of the Indiana Constitution.

### FACTS AND PROCEDURAL HISTORY

Mahowald served in the Indiana General Assembly for ten (10) years as both a State Representative and State Senator. He last served in 1975. During his tenure, legislators earned retirement benefits through the Public Employee Retirement Fund (PERF). In anticipation of his 65th birthday, Mahowald inquired as to the retirement benefit he would receive and he was informed that he would receive a total benefit of $36.00 per month.

In 1989, the General Assembly established the Legislators' Retirement System (LRS), codified at Ind.Code §§ 2–3.5–4–1—2–3.5–4–10. The LRS consists of both a defined benefit plan and a defined contribution plan.[3] All legislators who were

---

1. Robert Mahowald died on April 3, 1999. Therefore, Charlotte Mahowald, personal representative of the Estate of Robert Mahowald, was substituted for the appellant on June 9, 1999.

2. Oral argument was held in this case on October 5, 1999.

3. Mahowald challenges the constitutionality of the defined benefit plan only. The defined contribution plan is not at issue.

serving in the General Assembly on April 30, 1989, and who had served a total of ten (10) years at the time of retirement, were entitled to participate in the defined benefit plan. Under the LRS, these legislators were entitled to a retirement benefit of at least $400.00 per month ($40.00 per month for each year of service).

Mahowald filed a complaint seeking to have LRS declared unconstitutional for violation of the Privileges and Immunities Clause, Article I, § 23 of the Indiana Constitution. Mahowald complains that the LRS confers certain and significant rights on some ten year members of the General Assembly, while denying others the same right. That is, a legislator who has served for a total of ten years prior to April 30, 1989, is entitled to a retirement benefit of only approximately $36.00 per month, while a legislator who served the same number of years prior to and including the date of April 30, 1989, is entitled to a $400.00 per month retirement benefit.

The complaint was filed as a class action for retired legislators who served in the General Assembly for a total of ten years prior to April 30, 1989. However, a class had not been certified by the trial court at the time judgment was entered in favor of the State.

Mahowald filed a motion for summary judgment and thereafter, the State filed a cross-motion for summary judgment. The trial court granted the State's motion on July 15, 1998. In granting summary judgment in favor of the State, the trial court issued Findings of Fact and Conclusions of Law.

In its Findings of Fact, the trial court found, in pertinent part, as follows:

4. In 1989, the General Assembly established the Legislators' Retirement System ("LRS"). The option to participate in the LRS, is open to "each member of the General Assembly who: (1) is serving on April 30, 1989, and (2) who files an election under IC 2–3.5–3–1(b)." Ind.Code § 2–3.5–4–1.

5. Participants must be over the age of 65, must no longer be a member of the General Assembly and have at least ten years of service, or meet disability requirements, not be currently receiving or entitled to receive compensation from the State for work in any capacity, and not be receiving or have received a reduced monthly retirement benefit under Ind.Code Section 2–3.5–3–4–4(sic). Ind. Code § 2–3.5–4–2.

6. The LRS consists of two distinct funds: the legislator's defined benefit plan and the legislators' defined contribution plan. Ind.Code § 2–3.5–3–2. The purpose of two plans is "to provide retirement, disability, and survivor benefits to members of the General Assembly." . . .

7. The LRS plans are trusts that are "maintained for the purpose of paying benefits to participants and their beneficiaries and paying the costs associated with administering the plan.["] Ind. Code § 2–3.5–4–3. . . .

8. The LRS defined benefit plan grants monthly benefits to a legislator 65 years of age or older that equal the lesser of the following: (1) $40 multiplied by the number of years of service in the General Assembly before November 8, 1989 or, (2) the highest consecutive three-year average annual salary attributable to the participant's service as a legislator [ . . . divided by twelve (12) ]. Ind.Code § 2–3.5–4–3.

9. The defined benefit plan applies to members of the General Assembly who (1) were serving as of April 30, 1989, and (2) file an election under Indiana Code Section 2–3.5–3–1(b). Ind.Code § 2–3.5–4–1.

10. Legislators who served only prior to April 30, 1989 may receive benefits through the PERF fund. Ind.Code § 2–3.5–1.

11. Legislators who served on April 30, 1989, may elect to receive benefits through PERF or through the newly enacted LRS, including both the defined

benefit plan and the defined contribution plan. Ind.Code § 2–3.5–1–2.

12. Legislators who began service after April 30, 1989, may receive benefits only through the LRS defined contribution plan. Ind.Code § 2–3.5–1–3.

(R. 62–63).

In its order granting summary judgment in favor of the State, the trial court concluded that the LRS, Ind.Code §§ 2–3.5–4–1—2–3.5–4–10, is constitutional.

This appeal followed.

### DISCUSSION AND DECISION

■■■ The parties agree that there are no genuine issues of material fact and the sole issue before us is the constitutionality of the LRS statute under the Privileges and Immunities Clause, Article I, Section 23, of the Indiana Constitution.[4] When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter *de novo*. *Aide v. Chrysler Financial Corp.*, 699 N.E.2d 1177, 1180 (Ind.Ct.App.1998), *trans. denied.*

■■■ A statute may be the subject of a claim under Section 23 when it either grants unequal privileges or imposes unequal burdens. *Martin v. Richey*, 711 N.E.2d 1273, 1280 (Ind.1999). The statute at issue here, the LRS, admittedly grants unequal privileges to different members of the General Assembly since ten year members of the General Assembly who served prior to April 30, 1989, are only entitled to retirement benefits through PERF, while ten year members who served on April 30, 1989, are entitled to benefits under the LRS's defined benefit plan.

However, the trial court concluded that Mahowald failed to carry his burden in overcoming the statute's presumption of constitutionality. The trial court took note of the high standard that must be applied

in a challenge to the constitutionality of an Indiana statute.

Every statute stands before us clothed with the presumption of constitutionality until clearly overcome by a contrary showing. The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. If there are two reasonable interpretations of a statute, one of which is constitutional and the other is not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless such is required by the unambiguous language of the statute.

*Boehm v. Town of St. John,* 675 N.E.2d 318, 321 (Ind.1996) (citations omitted).

■■■ The judiciary is to afford the legislature "wide latitude in determining public policy," *Id.,* and "accord considerable deference to the manner in which the legislature has balanced the competing interests involved." *Collins v. Day,* 644 N.E.2d 72, 80 (Ind.1994). Furthermore, the judiciary should refrain from substituting its beliefs for that of the legislature in determining the wisdom or efficacy of a particular statute. *Boehm,* 675 N.E.2d at 321. "In approaching a consideration of the constitutionality of a statute, we must at all times exercise self restraint. Otherwise, under the guise of limiting the Legislature to its constitutional bounds, we are likely to exceed our own." *Bunker v. Nat'l Gypsum,* 441 N.E.2d 8, 11 (Ind.1982).

Mahowald acknowledges that the LRS statute is clothed with the presumption of constitutionality and that any reasonable interpretation of the statute is sufficient if it evokes a finding of constitutionality. However, Mahowald argues that the LRS violates the Privileges and Immunities Clause of the Indiana Constitution because it treats similarly situated persons differ-

---

4. Article I, § 23 provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

ently and because it arbitrarily distinguishes between the two groups depending on whether they served on April 30, 1989.

▇▇▇▇ To overcome the presumption of constitutionality under Article I, section 23, Mahowald bears the burden to negate every conceivable basis which might have supported the classification. *See Collins,* 644 N.E.2d at 80. "The *Collins* court determined that where a statute grants unequal privileges or immunities to different classes of persons, proper constitutional inquiry under Section 23 requires consideration of two factors." *American Legion Post # 113 v. State,* 656 N.E.2d 1190, 1192 (Ind.Ct.App.1995).

> First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

*Collins,* 644 N.E.2d at 80.

We first address the second prong of the *Collins* test as there seems to be little debate herein with regard to this prong. Mahowald does not dispute that the preferential treatment, (being entitled to receive defined benefits under the LRS), is "uniformly applicable and equally available to all people similarly situated." *Id.* The defined benefit plan as set forth in the LRS, is equally available to all members of the General Assembly who served on April 30, 1989, and its provisions are uniformly applied. Therefore, the LRS satisfies the second prong of the *Collins* test.

Nonetheless, Mahowald contends that the LRS fails the first prong of the *Collins* test. The issue concerning the first prong is whether the disparate treatment of the two groups of legislators, those serving for ten years prior to April 30, 1989, and those serving for ten years including April 30, 1989, was reasonably related to the "inherent characteristics which distinguish the unequally treated classes." *Collins,* 644 N.E.2d at 80. Mahowald recognizes that the legislature may pass statutes that confer certain benefits upon one class of citizens while denying such benefits to another class as long as the classifications and resulting differing treatment bear some reasonable relation to the purpose of the classification. However, Mahowald claims that here there is not a rational basis for the distinction and the line drawn by the legislature in an arbitrary one.

The State asserts that the LRS statute does not violate the first prong of the *Collins* test. The State argues that the LRS's date of service classification legitimately distinguishes between retired legislators and current and future legislators. This distinction represents a reasonable exercise of legislative line drawing.

Furthermore, the General Assembly was entitled to consider the fiscal implications of having an all-inclusive retirement system. A system embracing all legislators regardless of their retirement date would have been more expensive and the courts owe deference to legislative line-drawing that has fiscal implications. *See Indiana High School Athletic Ass'n v. Carlberg,* 694 N.E.2d 222, 240 (Ind.1997).

Our Supreme Court has held that "the question of classification under Section 23 is primarily a legislative question." *Id.*

> Legislative classification becomes a judicial question only where the lines drawn appear arbitrary or manifestly unreasonable. So long as the classification is based on substantial distinctions with reference to the subject matter, we will not substitute our judgment for that of the legislature; nor will we inquire into the legislative motives prompting such classification.

*Id.* (citing *Chaffin v. Nicosia,* 261 Ind. 698, 701, 310 N.E.2d 867, 869 (1974)).

Because fiscal considerations are a legitimate basis for legislative "line-drawing," we find that the LRS satisfies the first prong of the *Collins* test. Even if we were to find that this statute was "born of unwise, undesirable, or ineffectual policies," we do not substitute our belief as to the wisdom of a particular statute for that of the legislature. *State v. Rendleman,* 603 N.E.2d 1333, 1334 (Ind.1992).

Thus, we conclude that given the statutes' presumption of constitutionality, Mahowald failed to overcome that presumption and failed to negate "every conceivable basis which might have supported the classification." *American Legion Post # 113,* 656 N.E.2d at 1192. Consequently, the trial court properly granted the State's motion for summary judgment.

## CONCLUSION

Based on the foregoing, we affirm the trial court's grant of summary judgment in the State's favor.

Affirmed.

ROBB, J., and FRIEDLANDER, J., concur.