Sandra HOCHSTEDLER,
Appellant–Defendant,

v.

ST. JOSEPH COUNTY SOLID WASTE
MANAGEMENT DISTRICT,
Appellee–Plaintiff.

No. 71A03–0110–CV–330.

Court of Appeals of Indiana.

June 28, 2002.

John R. Price, Bruce A. Stuard, Indianapolis, IN, Attorneys for Appellant.

Mark D. Boveri, Patrick D. Murphy, Boveri Murphy Rice Ryan & Ladue, South Bend, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Sandra Hochstedler appeals the trial court's judgment in favor of St. Joseph County Solid Waste Management District (the "District"). Hochstedler raises three issues, which we restate as:

1. Whether the small claims court erred by entering judgment in favor of the District because the mandatory recycling fee imposed by Resolution 5–97 represented an unauthorized tax;

2. Whether the small claims court erred by entering judgment in favor of the District because Resolution 5–97 violated the Privileges and Immunities Clause of the Indiana Constitution; and

3. Whether the small claims court erred by entering judgment in favor of the District because the District exceeded its statutory authority when it enacted Resolution 5–97, which exempted certain individuals and entities from the recycling assessment.

We affirm.

The facts most favorable to the judgment follow. In 1991, St. Joseph County established the District pursuant to Indiana statutory authority.[1] On March 10, 1997, the District adopted Resolution 5–97, which established a mandatory curb-side recycling program in St. Joseph County. The mandatory curbside recycling program applies to "all single family residences and rental complexes with fewer than five units" in St. Joseph County. Appellant's Appendix at 16. Resolution 5–97 allows the District to charge a mandatory fee for the recycling service that is "based either on the price bid per residence in each zone, or a blended rate based upon the average of the per residence rates bid for all zones." *Id.* at 14. Pursuant to Resolution 5–97, the District established a mandatory monthly recycling fee of two dollars and seventy cents ($2.70) per property owner covered by the recycling program. Hochstedler, a property owner covered by the recycling program, refused to pay the mandatory monthly recycling fee.

On September 8, 2000, the District sued Hochstedler in small claims court for her failure to pay the mandatory recycling fee for a period of twelve months. After conducting a bench trial, the small claims court found in favor of the District and against Hochstedler in the amount of seventy-nine dollars and fifty cents ($79.50).

█ Before we address the three issues raised by Hochstedler, we recognize that judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). When reviewing claims tried by the bench without a jury, we shall not set aside the judgment "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the

---

1. The controlling statute at the time was Ind. Code § 13–9.5–2–4. However, in 1996, it was repealed and recodified as Ind.Code § 13–21–3–1(a). Ind.Code § 13–21–3–1(a) provides, in relevant part:

Each county shall, by ordinance of the county executive:

(1) join with one (1) or more other counties in establishing a joint solid waste management district that includes the entire area of all the acting counties; or

(2) designate itself as a county solid waste management district.

witnesses." Ind. Trial Rule 52(A). In determining whether a judgment is clearly erroneous, we do not reweigh the evidence or determine the credibility of witnesses. *Dado v. Jeeninga,* 743 N.E.2d 291, 293 (Ind.Ct.App.2001). Rather, we consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Id.* A judgment in favor of a party having the burden of proof will be affirmed if the evidence was such that from it a reasonable trier of fact could conclude that the elements of the party's claim were established by a preponderance of evidence. *Id.* This deferential standard of review is particularly important in small claims actions, where trials are "informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." S.C.R. 8(A). With this standard of review in mind, we now address Hochstedler's claims of error.

## I.

■ The first issue is whether the small claims court erred by entering judgment in favor of the District because the mandatory recycling fee imposed by Resolution 5–97 represented an unauthorized tax. Hochstedler argues that the mandatory recycling fee imposed by Resolution 5–97 is actually a tax because every citizen of St. Joseph County benefits from the curbside recycling program, but only a few citizens are obligated to pay for the program. Accordingly, Hochstedler asserts, Resolution 5–97 imposes an invalid tax because the District did not follow the proper statutory procedures for enacting a valid tax.

Because we are analyzing the terms of Resolution 5–97, a brief review of our rules of statutory construction is necessary. Interpretation of an ordinance is subject to the same rules that govern the construction of a statute.[2] *Ragucci v. Metro. Dev. Comm'n of Marion County,* 702 N.E.2d 677, 681 (Ind.1998). The cardinal rule of statutory construction is to ascertain the intent of the drafter by giving effect to the ordinary and plain meaning of the language used. *T.W. Thom Const., Inc. v. City of Jeffersonville,* 721 N.E.2d 319, 324 (Ind.Ct.App.1999). Accordingly, if the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *State v. Rans,* 739 N.E.2d 164, 166 (Ind.Ct.App.2000), *trans. denied.* In addition, the interpretation of a statute is a question of law reserved for the courts. *Id.* We review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.*

We begin our analysis by determining whether the mandatory recycling charge is tantamount to a tax or is a fee. Hochstedler argues that the mandatory recycling charge is not a fee because it is not based upon a property owner's use of curbside recycling services. Rather, she contends that property owners "in the [mandatory recycling] program are forced to pay, not based on their benefit, but to support a benefit for the entire community." Appellant's Brief at 9. Ind.Code § 13–21–3–12(2) enables the District to impose a fee on the final disposal of solid waste, including recyclables, within St. Joseph County. To determine a value for a recycling fee, Ind. Code § 13–21–14–2 provides that:

**2.** Generally, a resolution is not the equivalent of an ordinance because a resolution "denotes something less formal than 'ordinance.'" BLACK'S LAW DICTIONARY 1311 (6th ed. 1990). However, because Ind.Code § 13–21–3– 12(17) bestows upon the District the power to adopt resolutions that have the force of law, we review Resolution 5–97 as if it were an ordinance.

The [District] may fix the solid waste management fees on the basis of the following:

(1) A flat charge for each residence or building in use in the waste management district.

(2) The weight or volume of the refuse received.

(3) The average number of containers or bags of refuse received.

(4) The relative difficulty associated with the collection or management of the solid waste received.

(5) Any other criteria that the board determines to be logically related to the service.

(6) Any combination of these criteria.

Here, in enacting Resolution 5–97, the District expressly based the fee for curbside services "either on the price per bid per residence in each zone, or a blended rate based upon the average of the per residence rates bid for all zones." Appellant's Appendix at 14. Hochstedler argues that, with the exception of Ind.Code § 13–21–14–2(1), the criterion for determining the proper fee is usage. Thus, Hochstedler contends, because the mandatory recycling fee is not based upon usage, but rather property ownership, for Resolution 5–97 to impose a valid fee, the District must have enacted it pursuant to Ind.Code § 13–21–14–2(1). In sum, Hochstedler argues that the flat mandatory recycling fee was not based upon use of recyclables, but rather upon property ownership, regardless of whether the property owners subject to the recycling program actually used the program. Therefore, Hochstedler contends, the District's failure to link the flat fee "to or to base the fee upon the payer's use of publicly-owned or privately-funded facilities is what transformed the fee into a tax." Appellant's Brief at 10.

As we have previously observed:

A tax is compulsory and not optional; it entitles the taxpayer to receive nothing in return, other than the rights of government which are enjoyed by all citizens. On the other hand, a user fee is optional and represents a specific charge for the use of publicly-owned or publicly-provided facilities or services.

*Ace Rent–A–Car, Inc. v. Indianapolis Airport Auth.*, 612 N.E.2d 1104, 1108 (Ind.Ct. App.1993), *reh'g denied, trans. denied; see also City of Gary v. Ind. Bell Tel. Co., Inc.*, 732 N.E.2d 149, 156 (Ind.2000), *reh'g denied.* "Generally, a tax is an enforced contribution to provide for the support of government, whereas a fee is a charge for a particular benefit to the payer." *Id.* (quoting *BellSouth Telecomm., Inc. v. City of Orangeburg*, 337 S.C. 35, 522 S.E.2d 804, 806 (1999), *reh'g denied* ).

Hochstedler agrees that the mandatory nature of the recycling fee does not, by itself, transform the fee into a tax. However, Hochstedler argues that the District's failure to base the recycling fee upon the payer's use of curbside recycling services converted the fee into a tax. *See Ace Rent–A–Car*, 612 N.E.2d at 1108. To support such a proposition, Hochstedler relies upon *Ace Rent–A–Car* and *Ind. Bell.* In *Ace Rent–A–Car*, the Indianapolis Airport Authority ("IAA"), a municipal corporation empowered with the specific authority to adopt a schedule of reasonable charges and to collect them from all users within the district, imposed a fee upon all off-airport car rental companies for the privilege of using airport roadways to operate their shuttle services. 612 N.E.2d at 1106. Because the fee pertained to off-airport car rental companies, the companies "would be assessed a fee of 7% of all sales for the rental of automobiles to customers originating at the airport." *Id.* (internal quotations omitted).

Ace Rent–A–Car challenged the fee and argued that because the 7% fee is based solely upon revenue, it was transformed into a tax. *Id.* We disagreed and held that "the airport's very existence provides a marketplace from which Ace Rent–A–Car derives an economic benefit," such that a user fee based upon "a percent of the rental sales of automobiles made to customers originating at the airport represents at least one fair, although imperfect, method of measuring 'use.'" *Id.* at 1107–1108. We further held that because the fee is based upon furnishing Ace Rent–A–Car a specific benefit, it is thus not a tax but an authorized user fee under Ind.Code § 8–22–3–11. *See id.* at 1108.

Likewise, in *Ind. Bell,* the statute at issue authorized the city to impose a requirements-based fee upon all telecommunications providers using the city's rights-of-way. 732 N.E.2d at 152. Indiana Bell Telephone Company challenged the statute on the ground that the requirements-based fee was an unauthorized tax. *Id.* Relying upon the analysis of *Ace Rent–A–Car,* our supreme court held that the city's rights of way provide a marketplace from which the telephone company derives an economic benefit. Accordingly, the Court upheld the fee as "at least one fair, if imperfect, method of measuring [Indiana Bell Telephone Company's] use of [the City's] rights-of-way." *Id.* at 156–158. The Indiana Supreme Court further observed that:

> [Indiana Bell Telephone Company] receives considerably more "than the rights of government which are enjoyed by all citizens," when it conducts business in [the city's] rights-of-way. The requirements-based fee is not a tax but instead is compensation, representing a specific charge assessed against [Indiana Bell Telephone Company] for its com-

mercial use of [city]-owned rights-of-way to generate private profit.

*Id.* at 156.

In the present case, the mandatory recycling fee represents a specific payment for curbside recycling services and is associated with the necessary costs of the services rendered. In addition, the fee is uniformly imposed upon all residential property owners to which the ordinance applies. Accordingly, even though the fee is compulsory, we hold that the mandatory recycling fee is a fee and not a tax.

Although it may be the case that all who live in the district derive some overall environmental benefits from the recycling program, that does not detract from the fact that residential generators of waste material, such as Hochstedler, benefit more particularly from the program. For example, the curbside recycling program will enhance the district's ability to receive waste materials for disposal, such that residential generators of waste material, i.e., Hochstedler and other residents of the district, will have a place for their waste materials to be disposed of for a longer time prior to the need for change at perhaps greater costs. Waste generating residents are "users" as beneficiaries of the program, without regard to whether they directly participate in recycling. Hochstedler's election not to participate in the curbside recycling program is not a proper basis for excluding her from the mandatory recycling fee. Because the charge is a fee, the District used the proper procedures to implement the fee. Accordingly, the trial court did not err when it rejected this argument.

## II.

▮ The second issue is whether the small claims court erred by entering judgment in favor of the District because Resolution 5–97 allegedly violated the Privi-

leges and Immunities Clause of the Indiana Constitution. Municipal ordinances enacted pursuant to a proper delegation of power stand on the same footing as acts of the legislature when subjected to constitutional scrutiny. *City of Indianapolis v. Clint's Wrecker Serv., Inc.*, 440 N.E.2d 737, 740 (Ind.Ct.App.1982). Thus, when construing an ordinance, we apply the rules applicable to statutory construction. *Deja Vu of Hammond, Inc. v. City of Lake Station*, 681 N.E.2d 1168, 1171 (Ind.Ct.App.1997). Whether a statute or ordinance is constitutional on its face is a question of law and we review the matter de novo. *State v. Moss–Dwyer*, 686 N.E.2d 109, 110 (Ind.1997). We need not defer to a trial court's interpretation of the statute's meaning. *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 942 (Ind.2001). Rather, we independently review the statute's meaning and apply it to the facts of the case under review. *Id.*

▪ When a party challenges a statute based upon an alleged violation of the Indiana Constitution, our standard of review is well established. "Every statute stands before us clothed with the presumption of constitutionality until clearly overcome by a contrary showing. The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party." *Boehm v. Town of St. John*, 675 N.E.2d 318, 321 (Ind.1996). If there are two reasonable interpretations of a statute, we will choose the interpretation that permits upholding the statute. *Price v. State*, 622 N.E.2d 954, 963 (Ind.1993), *reh'g denied.*

▪ Moreover, we review the constitutionality of statutes with the understanding that "[t]he legislature has wide latitude in determining public policy, and we do not substitute our belief as to the wisdom of a particular statute for those of the legislature." *Boehm*, 675 N.E.2d at

321. Therefore, "[a] statute is not unconstitutional simply because the court might consider it born of unwise, undesirable, or ineffectual policies." *Id.* Nevertheless, we are also mindful of our duty to enforce the Constitution as written and intended. *Id.* Consequently, "[w]here a law or the application of a law is challenged on constitutional grounds, the judiciary has the authority, as well as the duty, to explore the constitutional ramifications of the law." *Id.*

Hochstedler asserts that Resolution 5–97 violates Article I, Section 23 of the Indiana Constitution because it treats similarly-situated persons differently. In response, the District argues that Hochstedler waived any such constitutional argument by failing to raise it before the small claims court.

▪ As a general rule, issues not raised before the small claims court are not preserved for appeal. *Clarkson v. Dep't Ins. State of Ind.*, 425 N.E.2d 203, 206 (Ind.Ct.App.1981). Hence, a party may not allege on appeal issues that he or she did not raise at trial. *Id.* Rather, to preserve a constitutional argument for appeal, the party must at least reference at trial the specific portion of the constitution allegedly offended. *Saloom v. Holder*, 158 Ind.App. 177, 183–184, 304 N.E.2d 217, 221 (1973) (holding that "[t]hrough the years Indiana courts have consistently held that a constitutional question is not properly raised on appeal if the trial court was not apprised of specific constitutional provisions upon which a party relies in asserting that legislation is unconstitutional"), *reh'g denied*, 158 Ind.App. 177, 307 N.E.2d 890 (1974). Moreover, an appellant who has presented his or her case to the trial court on a certain and definite theory shall not be permitted to change on appeal and prevail upon another theory not previously advanced. *Clarkson*, 425 N.E.2d at 206.

The District argues that Hochstedler waived any alleged violation of Article I, Section 23 of the Indiana Constitution because she failed to argue that specific provision before the small claims court. Specifically, the District maintains that by raising a possible violation of Article I, Section 23 for the first time on appeal, Hochstedler is merely attempting to change her theory of the case. The crucial factor, however, in determining whether Hochstedler may interject what appears to be a new issue into the appeal is whether the District had unequivocal notice of the existence of the issue and, therefore, had an opportunity to defend against it. *See United Farm Bureau Mut. Ins. Co. v. Lowe*, 583 N.E.2d 164, 168 (Ind.Ct.App. 1991), *trans. denied.*

The Record of the small claims hearing reveals that Hochstedler argued that Resolution 5–97 violated Article X, rather than Article I, Section 23, of the Indiana Constitution. However, the Record also reveals that Hochstedler's position before the small claims court included the claim that Resolution 5–97 did not apply equally to all citizens of St. Joseph County who generated recyclables and, further, that it violated the Indiana Constitution because it allowed cities and towns to "opt out." Transcript at 49. Thus, although Hochstedler did not specifically raise a violation of Article I, Section 23 of the Indiana Constitution before the small claims court, she did substantially raise the arbitrary and unreasonable classification issue before the small claims court. *See Lowe*, 583 N.E.2d at 168. As such, we find that Hochstedler did not waive her argument under the Privileges and Immunities Clause of the Indiana Constitution. *See, e.g., id.* Because we find no waiver, we now address the merits of Hochstedler's constitutional argument.

Hochstedler argues that Resolution 5–97 violates Article I, Section 23 of the Indiana Constitution because it treats similarly-situated persons differently. Article I, Section 23 of the Indiana Constitution provides that: "The General Assembly shall not grant to any citizen, or class of·citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." In reviewing an alleged violation of the Privileges and Immunities Clause, our supreme court has established a two-part test. *Collins v. Day*, 644 N.E.2d 72, 80 (Ind.1994). First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics that distinguish the unequally treated classes. *Id.* Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Id.* Courts must exercise substantial deference to legislative discretion when determining whether a statute complies with Article I, Section 23 of the Indiana Constitution. *Id.* Also, the burden is upon the party challenging the statute to negate "every reasonable basis for the classification." *Id.*

Here, Hochstedler argues that "the statutes regarding waste management and the [District] treated similarly-situated persons differently without justification and, therefore, are in violation of Article I, Section 23 of the Indiana Constitution." Appellant's Brief at 11. First, Hochstedler contends that Resolution 5–97 treats similarly-situated citizens of St. Joseph County differently based upon whether they live inside or outside the boundaries of a municipality. Second, Hochstedler argues that Resolution 5–97 treats similarly-situated persons differently because it exempts certain property owners from paying the mandatory recycling fee. We address each of Hochstedler's claims separately.

## A. *Exemptions for Municipalities*

Hochstedler first challenges Resolution 5–97 as being in violation of the Privileges and Immunities Clause of the Indiana Constitution because it treats citizens differently based upon whether they live inside or outside the boundaries of a municipality. To support her argument, Hochstedler relies upon Ind.Code § 13–21–3–12(17), which provides, in pertinent part, that: "[T]he powers of a district include ... [t]he power to adopt resolutions that have the force of law. However, a resolution is not effective in a municipality unless the municipality adopts the language of the resolution by ordinance or resolution." According to Hochstedler, Ind.Code § 13–21–3–12(17) "essentially provides citizens of a municipality with a check and balance power over the [District.]" Appellant's Brief at 12. As such, Hochstedler argues, citizens "who live in municipalities have the added protection of elected officials passing the resolution before that resolution has the force of law within that municipality ... However, there is no similar protection for citizens who live outside the boundaries of a municipality." *Id.* Hochstedler asserts that there is no rational basis for such a distinction; rather, all citizens of St. Joseph County should enjoy the benefits of representative government.

Meanwhile, the District contends that Resolution 5–97 does not violate the Privileges and Immunities Clause of the Indiana Constitution by treating similarly-situated persons differently based upon whether the citizens reside in a municipali-

ty. Rather, the District asserts that, with respect to Resolution 5–97, there was a political check and balance exercised at the county or nonmunicipal level in that the Board of the District, which was responsible for adopting Resolution 5–97, is composed of three county commissioners and a county council member.[3] Further, the District maintains that Resolution 5–97's exemption for municipalities is consistent with our state's policy favoring the doctrine of Home Rule. *See* Ind.Code § 36–1–3–2.

In determining whether Resolution 5–97 violates Article I, Section 23 of the Indiana Constitution, we first address the second prong of the *Collins* test as there seems to be little debate between the parties with respect to this prong. Under the second prong, the disparate treatment must be applied equally and evenly to all those within the classification. *Collins,* 644 N.E.2d at 80. Hochstedler does not dispute that the preferential treatment, i.e., the benefit of living in a municipality and having an independent legislative body adopt or reject the resolutions of the District, is "uniformly applicable and equally available to all people similarly situated." *See id.* Because Resolution 5–97 applies equally and uniformly to all persons in the classification (i.e., to all citizens who live in a municipality), there is no unconstitutionally disparate treatment among those who fall within the classification. *See, e.g., Cowart v. State,* 756 N.E.2d 581, 586 (Ind.Ct. App.2001), *trans. denied.* Therefore, Resolution 5–97 satisfies the second prong of the *Collins* test.

---

**3.** Ind.Code § 13–21–3–5, provides, in pertinent part, that "the board of a county district consists of the following members: (1) Two (2) members appointed by the county executive from the membership of the county executive. (2) One (1) member appointed by the county fiscal body from the membership of the fiscal body." Hochstedler argues that be-

cause the county commissioners are the executive arm of the county government and the county council is the executive arm, "[h]aving one member of a multi-member board approve an ordinance is simply not equivalent to having the question go before the entire board for a vote requiring majority approval." Appellant's Reply Brief at 7.

We now examine the constitutionality of Resolution 5–97 under the first prong of the *Collins* test. The issue concerning the first prong is whether the disparate treatment of the two groups of citizens, i.e., those living inside a municipality and those living outside the boundaries of a municipality, is reasonably related to the "inherent characteristics which distinguish the unequally treated classes." *Collins*, 644 N.E.2d at 80. Hochstedler claims that there is no rational basis for the distinction between citizens who reside in a municipality and those that reside outside a municipality and, thus, the classification is arbitrary and manifestly unreasonable.

However, to overcome the presumption of constitutionality of Resolution 5–97 under Article I, Section 23, Hochstedler bears the burden of negating every conceivable basis which might have supported the classification. *See Collins*, 644 N.E.2d at 80. Indiana strongly favors the doctrine of "Home Rule," wherein legislative authority is transferred to local units of government, such as municipalities, to allow them to manage their own local affairs. *See* Ind.Code § 36–1–3–2. Here, Resolution 5–97's exemption for municipalities serves as a legitimate basis in favor of the policy of Home Rule. Without the exemption, the county government, through the district it created per Ind.Code § 13–21–3–1(a), could impose the waste management regime on the citizens of a municipality. As such, the exemption is rationally related to the inherent characteristics that distinguish citizens who live in a municipality and those that reside outside the boundaries of a municipality. Because Hochstedler has failed to negate every conceivable basis that might have supported the exemption for municipalities, the exemption is not arbitrary or manifestly unreasonable. *See, e.g., Am. Legion Post No. 113 v. State*, 656 N.E.2d 1190, 1193 (Ind.Ct.App.1995), *trans. denied.* Accordingly, Resolution 5–97's exemption for municipalities does not violate Article I, Section 23 of the Indiana Constitution and the small claims court did not err by rejecting this claim.

### B. *Exemptions for Certain Property Owners*

Hochstedler next argues that Resolution 5–97 is in violation of Article I, Section 23 of the Indiana Constitution because it excludes property owners who own "multiple family rental complexes in excess of four units." Appellant's Brief at 14. In adopting Resolution 5–97, the District opined that: "At this time, it is impracticable to implement mandatory curbside recycling at multi-family rental complexes in excess of four units." Appellant's Appendix at 14. The District further recognized that:

> The most practicable means of implementing mandatory curbside recycling at a reasonable cost is for the District to create a number of zones within the District and to provide the service in each zone through competitively-bid contracts, which contracts will allow the District to control the cost of such service as well as the means by which such service will be provided.

*Id.* Accordingly, implicit in the District's decision to exempt property owners with multiple family rental complexes in excess of four units from enforcement of Resolution 5–97 were fiscal considerations. Hochstedler contends, however, that this exemption effectively allows certain property owners to benefit from the curbside recycling program without having the burden of paying the mandatory recycling fee. As such, Hochstedler argues, the exemption violates the Privileges and Immunities Clause of the Indiana Constitution.

As previously mentioned, for Resolution 5–97 to be valid under the Indiana Constitution, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. *Collins*, 644 N.E.2d at 80. In addition, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Id.* Again, in the present case, there is no dispute that Resolution 5–97 satisfies the second prong of the *Collins* test because it is uniformly applicable and equally available to all property owners in St. Joseph County who own multiple family rental complexes in excess of four units and to those who own single family residences and rental complexes with fewer than five units. *See, e.g., Cowart*, 756 N.E.2d at 586.

Nevertheless, Hochstedler contends that Resolution 5–97 fails the first prong of the *Collins* test because the disparate treatment accorded by the legislation is not reasonably related to inherent characteristics that distinguish the unequally treated classes. *See Collins*, 644 N.E.2d at 80. The District argues that Resolution 5–97's exemption for certain property owners based upon the size of their property represents a reasonable exercise of legislative line-drawing. We find the District's argument more compelling.

The District was entitled to consider the fiscal implications of having an all-inclusive mandatory recycling program. *See Mahowald v. State*, 719 N.E.2d 421, 425–426 (Ind.Ct.App.1999). A recycling program embracing all property owners regardless of the number of units would have been more expensive and difficult to administer. The courts owe deference to legislative line-drawing that has fiscal implications. *See, e.g., Ind. High School Athletic Ass'n v. Carlberg*, 694 N.E.2d 222, 240 (Ind. 1997), *reh'g denied.* Because fiscal considerations are a legitimate basis for legisla-

tive "line-drawing," we find that Resolution 5–97 satisfies the first prong of the *Collins* test. *See, e.g., Mahowald,* 719 N.E.2d at 425–426.

Even if we were to find that Resolution 5–97 was "born of unwise, undesirable, or ineffectual policies," we may not substitute our belief as to the wisdom of a particular resolution for that of the District. *See State v. Rendleman,* 603 N.E.2d 1333, 1334 (Ind.1992). Thus, we conclude that, given the presumption of constitutionality of Resolution 5–97, Hochstedler has failed to meet her substantial burden of negating "every conceivable basis which might have supported the classification." *See, e.g., Mahowald,* 719 N.E.2d at 425–426. Because Resolution 5–97 is constitutional, the small claims court's judgment is not clearly erroneous.

## III.

The last issue is whether the small claims court erred by entering judgment in favor of the District because Resolution 5–97 exempted certain "individuals and entities from the recycling assessment" in contravention of Ind.Code § 13–21–14–1, which affords the District the statutory authority to establish waste management fees. Appellant's Brief at 15. As such, Hochstedler contends, Resolution 5–97 is invalid and should not be enforced against her. Ind.Code § 13–21–14–1(a) provides, in pertinent part, that a board may:

> establish solid waste management fees in addition to fees imposed under IC 13–21–13 or IC 13–9.5–7 (before its repeal) that apply to *all persons* owning real property or generating solid waste within the district who are benefited by solid waste management, solid waste collection, a facility for solid waste disposal, or a facility for solid waste processing.

(Emphasis added). Moreover, for purposes of Ind.Code § 13–21, a "person" is defined as:

an individual, a partnership, a copartnership, a firm, a company, a corporation, an association, a joint stock company, a trust, an estate, a municipal corporation, a city, a school city, a town, a school town, a school district, a school corporation, a county, any consolidated unit of government, political subdivision, state agency, a contractor, or any other legal entity.

Ind.Code § 13–11–2–158(a).

In light of Ind.Code §§ 13–21–14–1 and 13–11–2–158, Hochstedler asserts that the "District did not have the authority [in adopting Resolution 5–97] to pick and choose to whom the [mandatory recycling] fee would apply." Appellant's Brief at 16. Rather, Hochstedler maintains, to be statutorily valid, Resolution 5–97 must apply either to all persons, as defined by Ind. Code § 13–11–2–158, or to no persons. Accordingly, Hochstedler reasons that because Resolution 5–97 exempts certain individual property owners and all legal entities, the District exceeded its authority in adopting Resolution 5–97 and, as a consequence, the mandatory recycling fee is not a legal or valid fee.

However, Hochstedler's argument ignores the broad powers given to the District under Ind.Code § 13–21–3–12. Ind. Code § 13–21–3–12 provides, in part, that:

> [T]he powers of a district include the following:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (16) The power *to otherwise do all things* necessary for the:
>
> (A) reduction, management, and disposal of solid waste; and
>
> (B) recovery of waste products from the solid waste stream;
>
> if the primary purpose of activities undertaken under this subdivision is to carry out the provisions of this article.

Ind.Code § 13–21–3–12(16) (emphasis added).

Here, the express purpose behind the District's adoption of Resolution 5–97 was "to reduce the final disposal of solid waste in the District by 35% by 1996 and 50% by 2000." Appellant's Appendix at 13. Indeed, to further illustrate its purpose, Resolution 5–97 provides:

> The implementation of a mandatory curbside recycling program is necessary to achieve the District Plan's 2000 goal. In addition, it will reduce the volume of refuse disposed of in the District, will contribute to reduced energy consumption and consumption of natural resources, and will therefore benefit the public health, welfare and safety of the residents of the District.

*Id.* at 15. Resolution 5–97's stated purpose is to reduce the disposal of solid waste in St. Joseph County and, in so doing, benefit the public health, welfare, and safety of its residents. *See id.* This purpose is in furtherance of carrying out the provisions of Ind.Code § 13–21. As such, the District had the express statutory authority to "do all things necessary for the … reduction, management, and disposal of solid waste." Ind.Code § 13–21–3–12. The District did not exceed its authority when it adopted Resolution 5–97, which exempted certain persons. Consequently, the small claims court did not err by entering judgment in favor of the District and against Hochstedler pursuant to Resolution 5–97.

For the foregoing reasons, we affirm the small claims court's grant of judgment in favor of the District and against Hochstedler.

Affirmed.

FRIEDLANDER, J., and BROOK, C.J., concur.