**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANTS:

**CHARLES L. BERGER**
Berger and Berger, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEES:

**ALLYSON R. BREEDEN**
**KEITH W. VONDERAHE**
**ROBERT L. BURKHART**
Ziemer Stayman Weitzel & Shoulders, LLP
Evansville, Indiana

**JOHN A. HAMILTON**
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

FILED
Feb 15 2013, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

| | | |
|---|---|---|
| PAUL STIELER ENTERRPRISES, INC, d/b/a HARBOR BAY, et al., | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  82A01-1205-CT-242 |
| | ) | |
| CITY OF EVANSVILLE and EVANSVILLE COMMON COUNCIL, | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Robert J. Pigman, Judge
Cause No. 82C01-1203-CT-138

**February 15, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Paul Stieler Enterprises, Inc. d/b/a Harbor Bay, Gloria's Corrall Club, Inc., JLK Bar Holdings, Inc. d/b/a Ricks 718 Bar, Leroy's Tavern, LLC, Peephole Bar & Grill, LLC, Bush Investment, Inc. d/b/a Marigold Bar, Jackie's Tavern, Inc., d/b/a Corner Pocket, Rick's Sports Bar and Family Room, Inc., Thomas J. Tanoos d/b/a Stockyard Inn, Lanhuck's Enterprises, Inc., Bucks Tavern of Evansville, LLC, 711 Tavern, LLC, Garry Sidetrack Tavern, LLC, Exotic She Lounge, Inc., Jimsam, LLC d/b/a Hobo Jungle, Scores, Inc., Playgirl, Inc. d/b/a The Lucky Lady, Shorty's Development, LLC d/b/a Shorty's Bar, L & D Williams Enterprises, LLC d/b/a Bob's Lounge, Donna M. Galloway d/b/a Bedford Tavern, Old Tyme Service, Inc., d/b/a Ye Olde Tyme Tavern, Lyle & Bills Sportszone Pizza and Pub, Roca Bar of Evansville, Inc., Boone Tower, LLC d/b/a Hammerheads, DMS Investments, Inc. d/b/a Dave's Sports Den, and Eller Corporation d/b/a Diamond Lanes (collectively, "Tavern Owners") sought injunctive relief and a declaratory judgment that City of Evansville Ordinance G-2012-1 Amended violates Article 1, Section 23 of the Indiana Constitution.[1] The trial court denied relief and Tavern Owners appeal. We affirm.

**Issue**

Tavern Owners present a single issue for review: whether the trial court erred in finding that the Ordinance did not violate Article 1, Section 23 of the Indiana Constitution.

**Facts and Procedural History**

---

[1] A group of private clubs who joined Tavern Owners in challenging the Ordinance, including VFW Post 2953, have separately appealed the order and pursued their claim that the Ordinance violates Article 1, Section 9 of the Indiana Constitution, in Cause No. 82A01-1206-PL-255.

In 2006, the Evansville Common Council ("the Council") adopted an ordinance that prohibited smoking in workplaces and other public places in the City of Evansville ("the City") but exempted bars, private clubs, and riverboats. On February 13, 2012, the Council adopted City of Evansville Ordinance G-2012-1 Amended, with an effective date of April 1, 2012 ("the Ordinance"). The Ordinance prohibits smoking in bars and private clubs but permits smoking on riverboats.[2] Casino Aztar is the sole riverboat as defined by the Ordinance within the corporate limits of the City.

Tavern Owners and a group of private clubs filed a complaint seeking preliminary and permanent injunctions against enforcement of the Ordinance and additionally seeking a declaration of its unconstitutionality. The City filed a motion to dismiss.

On March 28, 2012, the trial court conducted an evidentiary hearing on the motion for a preliminary injunction. The court heard evidence that Casino Aztar was the only casino meeting the definition of riverboat, most of the patrons came from outside the City, Casino Aztar generated significant income to provide for capital improvements in the City, and Casino Aztar had installed a major ventilation system. The court also heard testimony that Tavern Owners could expect to lose significant revenue from the extension of the smoking ban to their premises.

On March 30, 2012 the trial court entered its findings of fact, conclusions of law, and order denying injunctive relief. The trial court concluded that, although Tavern Owners had

---

[2] The Ordinance defines a riverboat as "a boat on which lawful gambling is authorized pursuant to Indiana Code 4-33, as amended." The surrounding restaurants and bars owned and operated by Casino Aztar are not exempted from the Ordinance.

understandable concerns about a negative impact upon their income, which might legitimately be presented in a legislative or political arena, the judiciary could not substitute its opinion for the legislative process, and there was no reasonable likelihood of success in establishing the unconstitutionality of the Ordinance.

On May 15, 2012, the trial court entered a final judgment upholding the Ordinance and denying injunctive relief, incorporating the findings of fact and conclusions of law of the March 30, 2012 order.[3]  This appeal ensued.

## Discussion and Decision

Tavern Owners claim that the Ordinance violates Section 23 of the Indiana Constitution, the Equal Privileges and Immunities Clause, which provides:

> The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens.

When a statute is challenged under the Indiana Constitution, it stands "clothed with the presumption of constitutionality until clearly overcome by a contrary showing." Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind. 1996).  The party challenging the constitutionality bears the burden of proof, and all doubts will be resolved against that party. Wallace v. State, 905 N.E.2d 371, 378 (Ind. 2009).  Municipal ordinances enacted pursuant to a proper delegation of power are likewise presumptively valid and "stand on the same footing as acts of the legislature" when subjected to constitutional scrutiny. City of Indianapolis v. Clint's Wrecker Serv., Inc., 440 N.E.2d 737, 740 (Ind. Ct. App. 1982).

---

[3] By agreement, the trial court dismissed Tavern Owners' Right of Privacy and Due Process claims.

4

"The requirements of Article 1, § 23 govern not only state statutes, but also the enactments and actions of county, municipal, and other governmental agencies and their equivalents." Dvorak v. City of Bloomington, 796 N.E.2d 236, 238 (Ind. 2003). However, "the question of classification under [Section 23] is primarily a question for the legislature" and "legislative classification becomes a judicial question only where the lines drawn appear arbitrary or manifestly unreasonable." Chaffin v. Nicosia, 261 Ind. 698, 701, 310 N.E.2d 867, 869 (1974). To overcome the presumption of constitutionality under Section 23, the challenger bears the burden to negate every conceivable basis which might have supported the classification. Mahowald v. State, 719 N.E.2d 421, 425 (Ind. Ct. App. 1999).

A statute may be the subject of a claim under Section 23 when it either grants unequal privileges or imposes unequal burdens. Martin v. Richey, 711 N.E.2d 1273, 1280 (Ind. 1999). The Ordinance extends to Casino Aztar (and any other riverboat to acquire a gaming license) a privilege in the form of an exception to the smoking ban that is unavailable to Tavern Owners. Tavern Owners claim that the grant of unequal privileges is arbitrary and manifestly unreasonable.

Observing that they, like Casino Aztar, face decreased revenues and have patrons who bear like risks from second-hand smoke, Tavern Owners maintain that they are similarly situated to Casino Aztar. According to Tavern Owners, the decision to exempt riverboats was necessarily motivated by the City's financial dependence upon casino revenue and this does not provide a rational basis for disparate treatment.

In Collins v. Day, 644 N.E.2d 72 (Ind. 1994), the Indiana Supreme Court "engaged in

5

a comprehensive review of the history and purposes animating the adoption of Section 23 as part of Indiana's 1851 Constitution and of the subsequent case law[.]" League of Women Voters of Ind. v. Rokita, 929 N.E.2d 758, 769 (Ind. 2010). "Synthesizing history, text, and subsequent case law, [the Court] adopted a superseding analytical formulation that, when statutes grant unequal privileges or immunities to differing persons or classes of persons, the Equal Privileges and Immunities Clause imposes two requirements[.]" Id. at 769-70. The formulation provides:

> "First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics [that] distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated." [Collins, 644 N.E.2d] at 80. In addition, "in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion." Id.

Rokita, 929 N.E.2d at 770. Accordingly, Tavern Owners bore the requirement of showing (1) that the Ordinance's disparate treatment of riverboats and taverns is not reasonably related to their distinguishing inherent characteristics, or (2) the exemption accorded riverboats is not uniformly applicable and equally available to all those similarly situated.

The first Collins factor "involves considering both the nature of the characteristics that distinguish the classes and the relationship between the disparate treatment and such characteristics." Rokita, 929 N.E.2d at 770. A statute may result in different treatment for different classifications of people without offending Section 23 if both (a) the disparately treated classifications are rationally distinguished by distinctive, inherent characteristics, and

6

(b) such disparate treatment is reasonably related to such distinguishing characteristics. Id. (citing Ledbetter v. Hunter, 842 N.E.2d 810, 813 (Ind. 2006) and Collins, 644 N.E.2d at 79).

As for the inherent characteristics distinguishing the Tavern Owners and Casino Aztar, Tavern Owners contend they do not exist. In making this claim, Tavern Owners focus only upon the negative financial impact, insisting that they would suffer from a smoking prohibition as much or more than Casino Aztar. There was evidence presented that a ban on smoking would cause Casino Aztar to lose approximately 30% of its revenue. According to Tavern Owners, they likewise expect to lose 30% to 40% of their revenue.

They do not contest the facts that Casino Aztar tenders $1 of its $3 per patron admittance fee to the City or that Casino Aztar leases property from the City. Thus, revenue generated by Casino Aztar brings revenue for the City of Evansville apart from and in addition to general taxation. The majority of that revenue is derived from the operation of slot machines. Accordingly, the casino is in direct competition with other casinos but not local bars, which lack slot machines. Casino Aztar is a major employer in the City.

Moreover, Tavern Owners ignore the evidence that Casino Aztar, a large multi-level venue, maintains a non-smoking level and has installed a large and modern ventilation system. Also, approximately 87% of the patrons of Casino Aztar are drawn from areas outside the City.

As to disparate treatment, Tavern Owners argue that the purpose of a smoking ban is health protection and special treatment to one group of patrons does not further this purpose. However, focus upon a law's "purpose" is not determinative. Rokita, 929 N.E.2d at 770-71.

7

Collins requires only that the disparate treatment accorded by the legislation, not the purposes of the legislation, be reasonably related to the inherent characteristics which distinguish the unequally treated classes. Dvorak, 796 N.E.2d at 239.

According to the evidence and public commentary presented to the Commission, the health risks of second-hand smoke to patrons of either entertainment venue is a valid consideration. However, exact exclusion and inclusion is impractical in legislation. Collins, 644 N.E.2d at 80. "Collins, its precursors, and its progeny all indicate that we look at the Legislature's balancing of the competing interests involved" and we accord considerable deference to the manner in which the legislature has balanced those interests. Humphreys v. Clinic for Women, Inc., 796 N.E.2d 247, 254-56 (Ind. 2003). We must determine whether the challenger has negated every conceivable basis which might have supported the classification. Ledbetter, 842 N.E.2d at 814.

Judicial inquiry is appropriate only where the lines drawn appear to be either arbitrary or manifestly unreasonable, and so long as the classification is based upon substantial distinctions with reference to the subject matter, we do not substitute our judgment for that of the legislature. Collins, 644 N.E.2d at 80. Nor will we inquire into the legislative motives for such classification. Id. Even so, "fiscal considerations are a legitimate basis for legislative line-drawing" and we do not substitute our belief as to the wisdom of a particular statute for that of the Legislature even if a statute was apparently "'born of unwise, undesirable, or ineffectual policies.'" Mahowald, 719 N.E.2d at 426 (quoting State v. Rendleman, 603 N.E.2d 1333, 1334 (Ind. 1992)).

Tavern Owners and Casino Aztar have different clientele and primary sources of revenue, differing obligations as to payments due to the City from their revenue, and distinct differences in their physical premises. Casino Aztar, a larger venue, has a half-million-dollar ventilation system to partially address the specter of second-hand smoke. Thus, the classifications are rationally distinguished by distinctive, inherent characteristics. Tavern Owners did not negate every conceivable basis which might have supported the classification here.

As for the second Collins factor, Tavern Owners do not seem to dispute that the preferential treatment (an exemption from the smoking ban) is "uniformly applicable and equally available to all people similarly situated." Collins, 644 N.E.2d at 80. At this time, there are no other riverboats with a gaming license within the corporate limits of the City and the parties appear to be in complete agreement that the exemption from the smoking ban would be applicable to any other riverboat licensed for gaming in the future.

Finally, in determining whether Section 23 is violated, courts are to exercise substantial deference to legislative discretion. Rokita, 929 N.E.2d at 772 (citing Collins, 644 N.E.2d at 80). For example, in Rokita, "the possible absence of precise congruity in application to all voters represent[ed] a legitimate exercise of legislative discretion warranting our deference." Id.

Here, it is true that an individual who patronizes Casino Aztar may smoke or may be exposed to second-hand smoke although if he or she chooses to patronize a bar in the City, smoking is banned. Tavern Owners observe that smoking in either bars or casinos impacts

9

patrons' health. Clearly, however, Tavern Owners' petition for relief is not targeted toward expanding the ban such that riverboat patrons are free of second-hand smoke. Rather, Tavern Owners seek a declaration that the ban is facially unconstitutional. Arguing that there are pervasive and equal health risks of second-hand smoke does not advance this position. Nonetheless, when 87% of riverboat patrons are non-city residents, City legislation has greatly diminished impact on their lifestyle and health choices. In these circumstances, the absence of precise congruity in legislation is entitled to deference.

Tavern Owners have not satisfied their substantial burden to demonstrate that the challenged ordinance violates the Equal Privileges and Immunities Clause of the Indiana Constitution.

Affirmed.

VAIDIK, J., and BROWN, J., concur.