**S.H., Appellant–Petitioner,**

v.

**D.H., Appellee–Respondent.**

**No. 15A01–0309–CV–335.**

Court of Appeals of Indiana.

Oct. 10, 2003.

Jacquelyn Bowie Suess, Indiana Civil Liberties Union, Indianapolis, IN, Attorney for Appellant.

John R. Price, Price & Associates, Indianapolis, IN, Theresa Holland, Rising Sun, IN, Attorneys for Appellee.

## OPINION ON APPELLANT'S MOTION TO STAY

BAKER, Judge.

S.H. (Mother), appellant-petitioner, appeals the trial court's order with regard to emergency medical intervention for Mother's minor daughter (Minor). Specifically, Mother argues that the trial court erred in requiring both her signature and the signature of D.H. (Father), appellee-respondent, to give consent for Minor to receive an abortion. Concluding that only one parent's signature is required by statute, we reverse.

### FACTS

Mother and Father were divorced on November 1, 1990. Pursuant to an agreement, which was subsequently made an order of the divorce court, Mother and Father have joint legal custody over their minor daughter, who is currently sixteen years old. However, Mother had sole physical custody of Minor while Father had reasonable visitation.

On September 4, 2003, Father learned that Minor was about twenty weeks pregnant and had scheduled an abortion for September 9. On September 5, Father moved the divorce court for an emergency hearing to enjoin Mother from signing a medical consent for Minor's abortion. On September 8, the divorce court entered a final order restraining Minor from obtaining an abortion without the signatures and consent of both parents. The trial court stated in its order:

> The Court finds that although the law [Indiana Code section 16–34–2–4] provides that one (1) parent's signature is sufficient to permit an abortion to occur in Indiana, this case requires the signature and consent of both parents for the abortion to take placed [sic] based on the joint custody arrangement, the lan-

guage in the Decree requiring joint decision making, and the gravity of this decision.

Order Granting Motion for Emergency Medical Intervention for Minor Child p. 3. Mother then filed a Motion to Stay the Permanent Injunction, which the trial court denied on September 10.

On September 11, Mother filed with this court the Appellant's Motion for Stay of Permanent Injunction Pending Appeal and Motion for Emergency Stay Without Notice so Minor Child Can Obtain Abortion Based on the Consent of One Parent, alleging that the trial court had required the consent of both parents in contravention of Indiana Code section 16–34–2–4 and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Given the time constraints due to the fact that the time in which Minor could obtain a legal abortion was rapidly diminishing, a panel of this court met the same day and issued an order granting Mother's motion on the grounds that only one parental signature is required by law for Minor to obtain an abortion. We therefore directed the trial court to dissolve the September 8 permanent injunction. We now proceed to provide the rationale for our decision construing the provisions of Indiana Code Section 16–24–2–4(a).

### DISCUSSION AND DECISION

We review the construction of statutes *de novo*, giving no deference to the trial court's interpretation. *In re K.J.A.*, 790 N.E.2d 155, 158 (Ind.Ct.App. 2003). Our goal is to ascertain the intent of the legislature by giving effect to the language that was used. *Id.* "Accordingly, if the language of a statute is clear and unambiguous, it is not subject to judicial interpretation." *Id.* (quoting *Hochstedler v. St. Joseph County Solid Waste Mgmt.*

*Dist.*, 770 N.E.2d 910, 914 (Ind.Ct.App. 2002)).

■ Indiana Code section 16–34–2–4(a) provides, "No physician shall perform an abortion on an unemancipated pregnant woman less than eighteen (18) years of age without first having obtained the written consent of one (1) of the parents or the legal guardian of the minor pregnant woman." It appears from the trial court's order that the judge construed this statute to mean that the minor must obtain the consent of one of the parents in an intact marriage or the collective legal guardian if the parents are divorced. However, on its face, the statute provides that the consent of only one parent or one legal guardian is required in any circumstance. The word "guardian" is not pluralized, and we reject the notion that Mother and Father become one guardian simply by virtue of sharing joint legal custody after divorce. Put another way, each individual is a legal guardian of Minor.

■ Having said that, the statute must be read in connection with Minor's fundamental right to an abortion as recognized by *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). A minor's right to an abortion may constitutionally be restricted. *Hodgson v. Minnesota*, 497 U.S. 417, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990), concerned a two-parent notification statute with a bypass procedure that was to become active if the two-parent notification was found to be unconstitutional. In a split decision, one majority of the Court held that the two-parent notification requirement served no legitimate state interest and therefore declared the requirement to be unconstitutional. *Id.* at 450–55, 110 S.Ct. 2926. However, another majority held that the judicial bypass procedure removed the constitutional objection to the two-parent notification requirement. *Id.* at 500, 110 S.Ct. 2926 (citing *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979)). Thus, a minor may constitutionally be required to obtain the consent of two parents before she can receive an abortion as long as a judicial bypass procedure is in place. However, by statute in Indiana, a minor may only be required to obtain the consent of one parent, one legal guardian, or the court through the judicial bypass procedure before she may legally receive an abortion. I.C. § 16–34–2–4.

[6, 7] It is a canon of statutory interpretation that when a statute may be construed to support its constitutionality, that construction must be adopted. *Dept. of Revenue of State of Indiana v. There to Care, Inc.*, 638 N.E.2d 871, 873 (Ind.Ct. App.1994). In general, the State may not deny rights to one group of minors that are given to another group of minors based on the status of their parents. This is most clearly demonstrated in relation to illegitimate children. As we stated in *S.M.V. v. Littlepage*, 443 N.E.2d 103, 105–06 (Ind.Ct.App.1982):

> In general, a statute may not deny an illegitimate child rights given to children generally. The rationale for the rule is that a state should not attempt to influence the actions of men and women by imposing sanctions on the children of illicit relationships. Visiting condemnation upon the head of an innocent child who is not responsible for his birth is illegal and unjust, as well as an ineffectual way of deterring parents. A state may create statutory classifications, and great respect, deference and latitude is accorded them by the courts. However, the classifications must, at a minimum, be rational and bear a reasonable relation to statutory objectives and legitimate state interests in order to satisfy equal protection requirements. A state may not create a classification if the

classification results in an "invidious discrimination" against a particular class, and if the classification unnecessarily excludes illegitimate children, it is constitutionally flawed.

*See also Pickett v. Brown,* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983); *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982); *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973).

■ Likewise, the State may not require the consent of two parents for a minor to receive an abortion simply because the parents happen to be divorced with joint legal custody where that burden would not be imposed on the minor child of an intact family. To paraphrase the *Littlepage* court, this would merely be visiting condemnation upon the head of an innocent child who is not responsible for her parent's divorce. There is no rational reason to make it more difficult for the child of divorced parents to receive an abortion than for the child of married parents. Thus, the trial court erred when it required both Mother and Father to give their consent.

Reversed and remanded with instructions to dissolve the trial court's order.

HOFFMAN, Sr. J., and BAILEY, J., concur.

## OPINION ON APPELLEE'S MOTION TO RECONSIDER

BAKER, Judge.

D.H. (Father), appellee-respondent filed a motion to reconsider an order we issued on September 11, 2003, with regard to emergency medical intervention for Father's minor daughter (Minor). Specifical-ly, Father argues that although the trial court erred in requiring both his signature and the signature of S.H. (Mother), appellant-petitioner, to give consent for Minor to receive an abortion, the fact that the trial court found the fetus to be viable preempts the signature requirement. Finding that the trial court did not have sufficient evidence to make a determination of viability, we affirm our September 11 order.

### FACTS

We hereby incorporate by reference the facts as recounted in *S.H. v. D.H.,* No. 15A01–0309–CV–335 (Opinion on Appellant's Motion to Stay). We also note the following additional facts. On September 12, Father filed with the Indiana Supreme Court an ex parte petition to vacate our September 11 order. The supreme court refused jurisdiction based on Appellate Rule 57(B), which states that the supreme court will not entertain petitions seeking transfer of jurisdiction from orders of the court of appeals, except from orders to dismiss. The supreme court then stated that Father's motion for a stay could be treated as a motion to reconsider under Appellate Rule 34(B). Father filed in the court of appeals a post-order response and motion to reconsider on September 12. An oral argument on the motion to reconsider was held on September 15.[1] In addition to challenging the order, Father raised the issue of viability of the fetus. We issued an order from the bench affirming our order of September 11 for the same reasons that we expressed in that order and the accompanying opinion. Specifically, Indiana Code section 16–34–2–2, controls, and the viability of a fetus is to be determined by the attending physician.

1. We commend counsel on their professional manner and workmanship, especially given the time constraints.

## DISCUSSION AND DECISION

■ We review the construction of statutes *de novo*, giving no deference to the trial court's interpretation. *In re K.J.A.*, 790 N.E.2d 155, 158 (Ind.Ct.App.2003). Our goal is to ascertain the intent of the legislature by giving effect to the language that was used. *Id.* "Accordingly, if the language of a statute is clear and unambiguous, it is not subject to judicial interpretation." *Id.* (quoting *Hochstedler v. St. Joseph County Solid Waste Mgmt. Dist.*, 770 N.E.2d 910, 914 (Ind.Ct.App.2002)).

■ Indiana Code section 16–34–2–2 states:

It shall be the responsibility of the attending physician to do the following:

(1) Determine in accordance with accepted medical standards which trimester the pregnant woman receiving the abortion is in.

(2) *Determine whether the fetus is viable.*

(3) Certify that determination as part of any written reports required of the attending physician by the state department or the facility in which the abortion is performed.

(Emphasis added). The mandate of the statute is absolutely clear: it is the duty of the woman's attending physician, not the court in the first instance, to determine whether the fetus is viable.

At oral argument, Father stated that the only evidence before the trial court regarding viability of the fetus was an ultrasound and literature regarding fetal development at twenty weeks and information regarding the abortion procedure. The trial court found that Minor has a family physician, but that neither she nor Mother had consulted with the family physician since the time the pregnancy had been confirmed. Order Granting Motion for Emergency Medical Intervention for Minor Child p. 3. Nevertheless, the trial court found that the fetus was viable as of September 9, and thus no abortion could be performed at a later date without a finding that the health of the mother was endangered. *Id.* at 4. The trial court then went on to preclude Minor from presenting herself to her family physician to determine if the fetus was viable by restraining her, Mother, and Father from seeking an abortion outside the requirements of the order. *Id.*

■ Indiana does not have a bright-line trimester-based presumption of viability. The General Assembly has determined that the attending physician is the individual who determines whether a fetus is viable. This determination may then be reviewed by the courts. To hold otherwise would be to close the courthouse door, which is precluded by Article I, section 12 of the Indiana Constitution.[2] *See also Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (the physician is the one against whom the criminal statutes directly operate in the event he procures an abortion that does not meet the statutory exceptions and conditions and therefore should not be required to await and undergo a criminal prosecution as the sole means of seeking relief); *Women's Medical Professional Corp. v. Voinovich*, 130 F.3d 187, 205 (6th Cir.1997) (holding that the determination of whether a medical emergency or necessity exists, like the determination of whether a fetus is viable, is fraught with uncertainty and susceptible to being subsequently disputed by others).

---

2. "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Ind. Const. Art. I, § 12.

That said, an interested party, such as the father of the fetus or the parent or legal guardian of a pregnant minor, may challenge the attending physician's determination that the fetus is not viable in court based on competent evidence, namely the opposing testimony of a doctor who has examined the mother and found the fetus to be viable.

We are not today answering the question of whether this particular fetus is viable, nor are we creating a bright-line test for viability. We simply find that in this case, the trial court did not have before it the proper evidence as required by the General Assembly to make a determination, in accordance with a physician's opinion and/or other relevant evidence, as to whether this particular fetus was viable.

While we have reconsidered our judgment, the judgment of the trial court remains reversed.

VAIDIK, J., and BARNES, J., concur.