Peter DVORAK, Imram Aziz, Brian Gach, Eric Himes, Scott Albright, and Alan Lutz, Appellants (Defendants below),

v.

CITY OF BLOOMINGTON, Appellee (Plaintiff below).

No. 53S01–0209–CV–472.

Supreme Court of Indiana.

Sept. 23, 2003.

Michael L. Carmin, Andrews Harrell Mann Carmin & Parker, Julia Blackwell Gelinas, Nelson D. Alexander, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellants.

Linda Runkle, Corporation Counsel, Patricia S. Bernens, City Attorney, R. Michael Flory, Asst. City Attorney, Bloomington, IN, Attorneys for Appellee.

J. Alexander Tanford, Bloomington, IN, Kenneth J. Falk, Michael J. Lewinski, Timothy E. Ochs, Tanya D. Marsh, Ice Miller, Indianapolis, IN, Robert L. Bauman, West Lafayette City Attorney, Pamela J. Hermes, West Lafayette Assistant City Attorney, Gambs, Mucker & Bauman, Lafayette, IN, for Amici Curiae Indiana Civil Liberties Union, Indiana Association of Cities and Towns, City of West Lafayette, Indiana.

DICKSON, Justice.

This appeal challenges the trial court's determination that a local zoning ordinance restricting the number of unrelated adult persons per dwelling in a single-family residential zone does not violate the Privileges and Immunities Clause of the Indiana Constitution and was not an *ultra vires* act. We affirm.

Peter Dvorak is the owner of a residential property located at 107 S. Bryan Avenue in Bloomington. On April 23, 1996, the City filed a complaint against Dvorak and the other defendants-appellants, tenants of Dvorak (hereinafter collectively "Dvorak"), claiming that they violated a zoning ordinance in the Bloomington Municipal Code which prohibits the property from being occupied by more than four adults unrelated by blood, marriage, or adoption.[1] The City's complaint sought to enjoin future use of the property inconsistent with the ordinance and to impose a fine of $2,500 per day from the time the violation began until the time it ceased. Dvorak filed a motion for summary judgment, claiming that the ordinance was void as an *ultra vires* act and that it violated Article 1, Section 23, the Equal Privileges and Immunities Clause, of the Indiana Constitution. After a hearing and the submission of briefs by the parties, the trial court denied the motion, finding that the ordinance was neither *ultra vires* nor unconstitutional. At Dvorak's request, the trial court certified the ruling for interlocutory appeal. The Court of Appeals accepted the appeal, vacated the decision of the trial court, and remanded for further proceedings, noting that the trial court had relieved the City of its duty to answer an interrogatory seeking "the City's justification(s) and rationale(s)" for the ordinance, and holding that Dvorak "should be given a reasonable opportunity for discovery in order to determine what goals the Ordinance was designed to promote." *Dvorak v. City of Bloomington,* 702 N.E.2d 1121, 1126 (Ind.Ct.App.1998). Thereafter, in a bifurcated bench trial on the issues of constitutionality and whether its adoption was an *ultra vires* act, the trial court entered judgment upholding the ordinance. Upon review of this judgment, the Court of Appeals reversed, finding the zoning ordinance unconstitutional under Section 23. *Dvorak v. City of Bloomington,* 768 N.E.2d 490 (Ind.Ct.App.2002). We granted the City's petition for transfer. *Dvorak v. City of Bloomington,* 783 N.E.2d 695 (Ind.2002) (table).

Dvorak contends on appeal that the zoning ordinance violates Section 23 and that its adoption was an *ultra vires* act.

### Article 1, § 23

When an enactment is challenged under the Indiana Constitution, it stands

---

1. The ordinance at issue is the following:

   A family consists of an individual or people related by blood, marriage, or legal adoption, and any dependent children of the household. In the RE and RS districts and in the RT7 district except where overlaid by a PRO 15 district, "family" also includes a group of no more than three (3) adults, and their dependent children, living together as a single housekeeping unit in a dwelling unit. In all other districts, "family" also includes a group of no more than five (5) adults and their dependent children, living together as a single housekeeping unit. Bloomington Municipal Code § 20.02.01.00.

before this Court "clothed with the presumption of constitutionality until clearly overcome by a contrary showing." *Boehm v. Town of St. John,* 675 N.E.2d 318, 321 (Ind.1996) (*citing Adoptive Parents of M.L.V. v. Wilkens,* 598 N.E.2d 1054, 1058 (Ind.1992); *State v. Rendleman,* 603 N.E.2d 1333, 1334 (Ind.1992); *Eddy v. McGinnis,* 523 N.E.2d 737, 738 (Ind. 1988)). The party challenging the constitutionality of the enactment bears the burden of proof, and all doubts are resolved against that party. *Id.*

■ The requirements of Article 1, § 23 govern not only state statutes, but also the enactments and actions of county, municipal, and other governmental agencies and their equivalents. *See, e.g., IHSAA, Inc. v. Carlberg,* 694 N.E.2d 222, 231 (Ind. 1997); *Haas v. South Bend Comm. Sch. Corp.,* 259 Ind. 515, 289 N.E.2d 495 (1972); *Phillips v. Officials of Valparaiso,* 233 Ind. 414, 120 N.E.2d 398 (1954); *Kersey v. City of Terre Haute,* 161 Ind. 471, 68 N.E. 1027 (1903); *Graffty v. City of Rushville,* 107 Ind. 502, 509, 8 N.E. 609, 612 (1886); *Indianapolis v. Clint's Wrecker Serv., Inc.,* 440 N.E.2d 737, 744 (Ind.Ct.App.1982). *But see Bd. of Comm'rs of the County of Howard v. Kokomo City Plan Comm'n,* 263 Ind. 282, 294, 330 N.E.2d 92, 100 (1975).

The Privileges and Immunities Clause of the Indiana Constitution states, "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Ind. Const. art. I, § 23. In *Collins v. Day,* we analyzed the common understanding of the framers and ratifiers of Section 23 and early cases implementing that section, concluding as follows:

> To summarize, we hold that Article I, Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

644 N.E.2d 72, 80 (Ind.1994).

Directing their first two claims to the first requirement in *Collins,* Dvorak contends:

> No inherent distinctions exist between equal numbers of related and unrelated adults that are reasonably connected to the accomplishment of the Ordinance's objectives of reducing trash, noise, and traffic and maintaining core neighborhoods by reducing adult population density.
>
> . . . .
>
> No inherent distinctions exist between equal numbers of related and unrelated adults that are reasonably connected to family values or providing healthful surroundings for family life.

Br. of Appellants at 12, 18. Dvorak's third claim involves the second *Collins* requirement: "[t]he Ordinance permits some nonfamily groups to live in single-family zones but denies this privilege to other similarly situated groups." *Id.* at 20.

As a preliminary matter, we note that Dvorak's constitutional arguments place considerable emphasis upon the alleged failures of the City to establish or demonstrate that disparate treatment of different classifications under the ordinance was reasonably connected to the City's legisla-

tive goals. Because it is Dvorak, not the City, who asserts this constitutional challenge, however, there is no burden upon the City to demonstrate that the ordinance is constitutional. Rather, the burden is entirely upon Dvorak to overcome the presumption of constitutionality and to establish a constitutional violation. *Sims v. United States Fid. & Guar. Co.*, 782 N.E.2d 345, 349 (Ind.2003); *Boehm v. Town of St. John*, 675 N.E.2d at 321; *Collins*, 644 N.E.2d at 81.

Dvorak asserts that the ordinance, Bloomington Municipal Code § 20.02.01.00, excludes from single-family residential districts households consisting of more than three adults not related by blood, marriage or legal adoption. Br. of Appellants at 4. The Bryan Avenue property was "grandfathered" to permit four unrelated adults to occupy the property. Appellants' App. at 143. Dvorak does not challenge the propriety of the City's creation of single-family residential districts, but claims a constitutional violation contending that the ordinance unequally treats two different classes: households comprised of four or more *related* adults and those comprised of four or more *unrelated* adults. Dvorak argues that the City's purposes in enacting the ordinance are not reasonably related to any inherent characteristics that distinguish these two classes.

This argument places a strained construction on *Collins*, which requires only that the "the disparate *treatment* accorded by the legislation," not the *purposes* of the legislation, "be reasonably related to the inherent characteristics which distinguish the unequally treated classes." *Collins*, 644 N.E.2d at 79; *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 696 (Ind. 2000) (considering whether special medical malpractice statute of limitations was reasonably related to the inherent characteristics distinguishing medical malpractice

victims from other tort victims); *McIntosh v. Melroe Co.*, 729 N.E.2d 972, 981 (Ind. 2000) (deciding whether the products liability statute of repose is reasonably related to the inherent characteristics that define the distinction); *IHSAA, Inc.*, 694 N.E.2d at 240 (determining whether limited athletic eligibility is reasonably related to inherent distinctions distinguishing transfer students from other students). While it is the treatment, not the legislative purpose, which must be reasonably related to the inherent distinctions between the classes, the legislative purposes may be a factor considered in making this determination. *See, e.g.*, *Sims*, 782 N.E.2d at 353–54.

We therefore find this appeal to present the following appellate issue: whether Dvorak has demonstrated either (1) that the ordinance's disparate treatment of two classes of persons is not reasonably related to their distinguishing inherent characteristics, or (2) that the preferential treatment accorded one of the classes is not uniformly applicable and equally available to all persons similarly situated.

■ As to the first issue, the disparate treatment provided by the ordinance is one of exclusion. Unlike households comprised of four or more adults related by blood, marriage or legal adoption, similar households comprised of four or more adults not so related are prohibited in single-family residential zones. Thus, the issue is whether this exclusion is reasonably related to the characteristic distinguishing these two classes—whether the members of a household are related by blood, marriage, or legal adoption. The answer is self-evident: limiting multiple-adult households in single family residential zones to families, and excluding non-families, is reasonably related to the difference between families and non-families. To put it another way, considering whether groups are or

are not families is obviously related to determining whether to exclude them from districts zoned for family residential use.

In addition to claiming that the Bloomington ordinance violates the first prong of *Collins,* Dvorak also contends that it is invalid under the second *Collins* prong: whether the preferential treatment accorded one of the classes is uniformly applicable and equally available to all persons similarly situated. Dvorak argues that the ordinance permits some non-family groups, specifically four college students living together in a house previously occupied by four other students before the ordinance was enacted, to live in a single-family zone but denies this privilege to other similar groups unable to locate such a "grandfathered" house, contrary to the second prong of the *Collins* test.

This isolated occurrence is insubstantial and does not render the ordinance contrary to Section 23. As we observed in *Collins:*

> Exact exclusion and inclusion is impractical in legislation. It is almost impossible to provide for every exceptional and imaginary case, and a legislature ought not to be required to do so at the risk of having its legislation declared void, even though appropriate and proper as applied to the general subject upon which the law intended to operate.

644 N.E.2d at 80, (*quoting Cincinnati, Hamilton & Dayton Ry. Co. v. McCullom,* 183 Ind. 556, 561, 109 N.E. 206, 208 (1915) (citations omitted)).

Under the Bloomington ordinance, any persons who are related by blood, marriage, or adoption may reside in a single dwelling in the zoning classification, as may up to three unrelated adults. The ordinance is uniformly applicable and equally available to all persons similarly situated.

We conclude that the Dvorak defendants have not carried their substantial burden to demonstrate that the challenged ordinance violates the Privileges and Immunities Clause of the Indiana Constitution.

### Ultra Vires

■ Dvorak· alternatively argues that the Bloomington ordinance exceeds the zoning powers delegated to cities under enabling legislation, Indiana Code § 36–7–4–201 *et seq.,* and thus is an *ultra vires* act. Br. of Appellants at 21. Specifically, Dvorak contends that the "zoning enabling legislation does not expressly authorize cities to make zoning distinctions between different kinds of single families or single housekeeping units based on legal, biological or numerical characteristics, or on familial status." *Id.* Dvorak also argues that the enabling legislation "does not expressly authorize cities to regulate *users* of real estate in addition to, and apart from, regulating *uses* of real estate." *Id.* at 22 (emphasis added).

The zoning enabling legislation declares that "a unit wanting to exercise planning and zoning powers in Indiana must do so in the manner provided by this chapter." Ind.Code § 36–7–4–201(a). The relevant objectives of the statute are stated in subsection (b):

> The purpose of this chapter is to encourage units to improve the health, safety, convenience, and welfare of their citizens and to plan for the future development of their communities to the end:
>
> . . . .
>
> (2) That new communities grow only with adequate public way, utility, health, educational and recreational facilities;
>
> . . . .
>
> (4) That residential areas provide healthful surroundings for family life
>
> . . .

I.C. § 36–7–4–201(b). In addition, other enabling legislation requires that zoning ordinances must be adopted for specific purposes, including "promoting the public health, safety, comfort, morals, convenience and general welfare." I.C. § 36–7–4–601(c)(3). To this end, the zoning ordinances may "regulate how real property is developed, maintained and used," including the implementation of "standards for population density and traffic circulation" and "any other provisions that are necessary to implement the purposes of the zoning ordinance." I.C. § 36–7–4–601(d)(2)(I)–(J).

With the adoption of the Indiana Home Rule Act, the legislature "abrogated the traditional rule that local governments possessed only those powers expressly authorized by statute." *City of Gary v. Indiana Bell Tel. Co., Inc.,* 732 N.E.2d 149, 153 (Ind.2000). The Home Rule Act expressly broadens a governmental unit's authority to include not only "[a]ll powers granted it by statute," but also "[a]ll other powers necessary or desirable in the conduct of its affairs even though not granted by statute." I.C. § 36–1–3–4(b). The Act explicitly declares that "[a]ny doubt as to the existence of a power of a unit shall be resolved in favor its existence." I.C. § 36–1–3–3(b). We have applied the Home Rule Act in construing the zoning authority of governmental units. *City of Crown Point v. Lake County,* 510 N.E.2d 684, 685–86 (Ind.1987).

Considering the enabling legislation and Home Rule Act, we reject Dvorak's claim that the enabling legislation does not expressly authorize cities to make zoning distinctions between different kinds of single housekeeping units based on familial status, or to regulate the *users* of real estate rather than *uses* of real estate, and thus the Bloomington ordinance is *ultra vires.* The legislature specifically authorized governmental units to use zoning so that "residential areas provide healthful surroundings *for family life,*" I.C. § 36–7–4–201(b)(4) (emphasis added), and in order "to promote the public health, safety, comfort, morals, convenience and general welfare," I.C. § 36–7–4–601(c)(3). The enactment of zoning ordinances that make distinctions based on familial relations of the users of residential real estate is an integral component of implementing these legislative objectives.[2] Our conclusion is further reinforced by the Home Rule Act which extends to each governmental unit "all other powers necessary or desirable in the conduct of its affairs." I.C. § 36–1–3–4(b).

### Conclusion

The challenged Bloomington zoning ordinance does not violate the Privileges and Immunities Clause of the Indiana Constitution nor is it void as an *ultra vires* act exceeding the City's statutory authority. We affirm the judgment of the trial court.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

2. Our conclusion is not altered by Dvorak's claim that "zoning distinctions based on intimate and genetic relationship, rather than the use of real estate, are not appropriate." Br. of Appellants at 22, *citing Metro. Bd. of Zoning Appeals v. Gunn,* 477 N.E.2d 289, 299 (Ind.Ct.App.1985), and *Residential Mgmt. Sys., Inc. v. Jefferson County Plan Comm'n,* 542 N.E.2d 227, 229 (Ind.Ct.App.1989). In both *Gunn* and *Residential Management,* the Court of Appeals confronted the application of residential zoning restrictions to group homes for developmentally disabled persons permitted under the specific provisions of Indiana Code § 16–13–21–12. To the extent that these two cases contain the language asserted by Dvorak, it was used solely in the context of providing "the qualities of a stable and permanent household to the developmentally disabled." *Gunn,* 477 N.E.2d at 299.