ATTORNEY FOR APPELLANTS
Charles L. Berger
Berger and Berger
Evansville, Indiana

ATTORNEYS FOR APPELLEES

CITY OF EVANSVILLE
Allyson R. Breeden
Keith W. Vonderahe
Robert L. Burkart
Ziemer Stayman Weitzel & Shoulders, LLP
Evansville, Indiana

EVANSVILLE COMMON COUNCIL
John A. Hamilton
Evansville, Indiana

Scott A. Danks
Danks and Danks
Evansville, Indiana

ATTORNEY FOR INDIANA
ASSOC. OF CITIES AND TOWNS
AND THE INDIANA MUNICIPAL
MANAGERS ASSOC.
Mark J. Crandley
Barnes & Thornburg LLP
Indianapolis, Indiana



FILED
Feb 11 2014, 9:40 am
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 82S01-1306-CT-436

PAUL STIELER ENTERPRISES, INC., D/B/A HARBOR BAY, *ET AL.*,     *Appellants (Plaintiffs),*

*v.*

CITY OF EVANSVILLE AND
EVANSVILLE COMMON COUNCIL,     *Appellees (Defendants).*

No. 82S01-1306-PL-437

VFW POST 2953, *ET AL.*,     *Appellants (Plaintiffs),*

*v.*

CITY OF EVANSVILLE AND
EVANSVILLE COMMON COUNCIL,     *Appellees (Defendants).*

Appeals from the Vanderburgh Superior Court,
Nos. 82C01-1203-CT-138 and 82C01-1203-PL-137
The Honorable Robert J. Pigman, Judge

On Transfer from the Indiana Court of Appeals,
Nos. 82A01-1205-CT-242 and 82A01-1206-PL-255

**February 11, 2014**

**Dickson, Chief Justice.**

The Equal Privileges and Immunities Clause, Article 1, Section 23 of the Indiana Consti-
tution, prohibits the "grant to any citizen, or class of citizens, privileges or immunities, which,
upon the same terms, shall not equally belong to all citizens." Today we hold that this clause
invalidates an Evansville ordinance expanding the city's smoking ban to bars and restaurants but
exempting its only riverboat casino ("the Casino").

In 2012, the Common Council of the City of Evansville (collectively "the City") enacted
an ordinance (G-2012-1, "the Amending Ordinance") that amended an existing smoking ban
(Evansville, Ind., Code ch. 9.80 (2006), later renumbered ch. 8.30,[1] "the Smoking Ban"). This
amendment extended the Smoking Ban to "[a]ll bars and taverns" and "[a]ll restaurants and eat-
ing establishments, including but not limited to any coffee shop, cafeteria, sandwich stand, and
any other eating establishment which gives or offers for sale food to the public, guests, or em-
ployees." Evansville, Ind., Ordinance G-2012-1, § 2 (Feb. 14, 2012). But the Amending Ordi-
nance exempted riverboat casinos[2] from the Smoking Ban. Various affected bars and private
clubs brought two separate actions against the City and its Council, seeking injunctive and de-
claratory relief on grounds of unconstitutionality. In one case, the lead plaintiff, Paul Stieler En-
terprises, Inc., is one of twenty-seven plaintiffs—bars and taverns that sell alcohol and food con-
sumed on site, some of which also operate with a license for gaming activities. In the other case,
VFW Post 2953 is one of nine plaintiffs—fraternal organizations who sell food and alcohol and

---

[1] The Evansville ordinance numbering system changed in 2009; thus, the smoking ban that exist-
ed prior to the Amending Ordinance was located at chapter 9.80 of the Evansville code, rather than chap-
ter 8.30.

[2] The Amending Ordinance exempted from the Smoking Ban: boats on which "lawful gambling
is authorized pursuant to Title 4, Article 33 of the Indiana Code." Evansville, Ind., Ordinance G 2012-1,
§ 1 (Feb. 14, 2012). Pursuant to limits imposed by Indiana statute, there is only one such riverboat in Ev-
ansville, the Casino Aztar ("the Casino").

conduct gaming operations under a charitable gaming license. Collectively, the bars and the private clubs ("the Bars and Clubs") contend that the 2012 Amending Ordinance, on its face,[3] violates the Equal Privileges and Immunities Clause of the Indiana Constitution.[4]

The trial court denied injunctive relief, upholding the constitutionality of the Amending Ordinance, and issued final judgment. The Court of Appeals affirmed. *See* Paul Stieler Enterprises, Inc. v. City of Evansville, No. 82A01-1205-CT-242, 984 N.E.2d 257 (Ind. Ct. App. Feb. 15, 2013) (table); VFW Post 2953 v. City of Evansville, No. 82A01-1206-PL-255, 984 N.E.2d 257 (Ind. Ct. App. Feb. 15, 2013) (table). The plaintiffs in both cases filed petitions to transfer, which we granted. Simultaneously addressing both appeals in today's opinion,[5] we hold that the 2012 Amending Ordinance, on its face, violates the Equal Privileges and Immunities Clause of the Indiana Constitution.

Whether a statute or ordinance is constitutional on its face is a question of law and we review the matter *de novo*. State v. Moss-Dwyer, 686 N.E.2d 109, 110 (Ind. 1997). "Our methodology for interpreting and applying provisions of the Indiana Constitution is well established. It requires: a search for the common understanding of both those who framed it and those who ratified it. City Chapel v. South Bend, 744 N.E.2d 443, 447 (Ind. 2001) (internal citation omitted). To determine this intent, we "examin[e] the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." Ind. Gaming Comm'n v. Moseley, 643 N.E.2d 296, 298 (Ind. 1994). We look to history "to ascertain the old law, the mischief, and the remedy." Bayh

---

[3] This case presents facial but not as-applied constitutional challenges. The Bars and Clubs seek a general declaration that the Amending Ordinance violates Article 1, Section 23 of the Indiana Constitution, not any individual relief.

[4] The appeal brought by the private clubs also argues that the Amending Ordinance violates Article 1, Section 9 of the Indiana Constitution by infringing on the right to free association. As to this issue, we summarily affirm the Court of Appeals. Ind. Appellate R. 58(A)(2).

[5] The Court of Appeals issued two opinions identical in all respects except for party names and details. After these opinions were issued, the attorney for plaintiffs VFW Post 2953, *et al.*, Leslie C. Shively, was appointed Judge of the Vanderburgh Superior Court, following which Charles Berger, the attorney for plaintiffs Paul Stieler Enterprises, *et al.* also entered his appearance for the plaintiffs VFW Post 2953, *et al.*, and now-Judge Shively withdrew. The ensuing transfer petitions in each appeal are identical in all respects except for party names and details. While we do not formally consolidate these appeals pursuant to Indiana Appellate Rule 38(B), today's opinion simultaneously addresses both appeals.

v. Sonnenburg, 573 N.E.2d 398, 412 (Ind. 1991) (quoting State v. Gibson, 36 Ind. 389, 391 (1871)). A statute challenged under the Indiana Constitution "stands before this Court 'clothed with the presumption of constitutionality until clearly overcome by a contrary showing.'" Dvorak v. City of Bloomington, 796 N.E.2d 236, 237–38 (Ind. 2003) (quoting Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind. 1996)). The party challenging the constitutionality of a statute bears the high burden of overcoming this presumption and establishing a constitutional violation, and any doubts are resolved in favor of the legislature. Dvorak, 796 N.E.2d at 238.

### 1. Equal Privileges and Immunities

The Bars and Clubs contend that the 2012 Amendment to the Smoking Ban gives the Casino a privilege—an exemption from the Smoking Ban—that is not provided to the Bars and Clubs and others similarly situated and thereby violates the Equal Privileges and Immunities Clause of the Indiana Constitution.[6]

In Collins v. Day, 644 N.E.2d 72 (Ind. 1994), this Court engaged in a comprehensive review of the text of Section 23 in the context of the history surrounding its drafting and ratification, the purpose and structure of Indiana's 1851 Constitution, and subsequent case law, particularly cases decided contemporaneously with the adoption of Section 23 and noting that such cases have been "accorded strong and superseding precedential value." Id. at 77. Synthesizing text, history, purpose, and case law, we adopted a preeminent two-part standard for determining a statute's validity under Section 23:

> First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated.

Id. at 80. Compliance with both elements is required to satisfy the constitutional requirement.

---

[6] The disparity of privileges presented in this case is of recent origin, not one based on historical or long-recognized public policy [or societal values] which may constitute proper inherent differences justifying a legislative classification, and which may provide a reasonable basis for disparate treatment of such classifications under Collins v. Day. As this Court noted in Collins, "Section 23 does not appear to have been enacted to prevent abridgment of any existing privileges or immunities, nor to assure citizens the equal protection of the laws." 644 N.E.2d 72, 77 (Ind. 1994).

The requirements of Article 1, Section 23 "govern not only state statutes, but also the enactments and actions of county, municipal, and other governmental agencies and their equivalents." Dvorak, 796 N.E.2d at 238.

Under the facts of this case, both the language of the enactment and the parties identify essentially the same disparately treated classifications. The parties agree that the 2012 Amending Ordinance subjects bars, clubs, and others to the Smoking Ban but exempts riverboat casinos. Under the City's 2006 Smoking Ban, the Casino and the Bars and Clubs were all in the same exempted classification. That ordinance granted various exemptions, including exemptions (a) for any bar or tavern that holds a beer, liquor and/or wine retailer's permit under the laws of Indiana and excludes customers and employees under the age of eighteen and (b) for any business or club that qualifies for a certain federal tax exemption and is a "club" or "fraternal club" as defined by Indiana statute.[7] The 2012 Amending Ordinance eliminated the exemptions for these groups but created a new special exemption for "riverboats," which were expressly defined as "a boat on which lawful gambling is authorized pursuant to Title 4, Article 33 of the Indiana Code, as amended."[8] This Article, entitled "Riverboat Gambling," provides an elaborate regulatory scheme under which the Indiana Gaming Commission permits gambling on a narrowly restricted number of riverboats operated by licensed owners. Thus, the two distinguishing characteristics upon which the Amending Ordinance establishes different classes for unequal treatment are: (1) whether the establishment is floating or land-based and (2) whether the establishment conducts gambling under the Riverboat Gambling statutes.

The Amending Ordinance accords preferential treatment in that smoking is permitted in floating bars with gambling under Indiana's Riverboat Gambling statute but prohibited in land-based bars and clubs, including those with gambling permitted under other sections of the Indiana Code.[9] None of the parties argue that the unequal treatment is reasonably related to whether

---

[7] Evansville, Ind., Code § 9.80.03(A)(7), (8) (2006).

[8] Ordinance G-2012-1, §§ 1–3. Title 4, Article 33 of the Indiana Code is entitled "Riverboat Gambling."

[9] Non-profit, tax-exempt, and established veteran and civic organizations may obtain a Charity Gaming License to conduct a bingo or raffle event, hold a charity game night or festival, give door prizes, sell pull tabs, or hold "[a]ny other gambling event approved by the [Indiana Gaming Commission]." Ind. Code § 4-32.2-4-1 (2012); see Ind. Code 4-32.2 et seq. (2012). Establishments licensed to sell alcoholic

5

the establishment is floating or land-based.  We agree.  The issue is thus whether the unequal prohibition of smoking is reasonably related to the sole remaining distinguishing characteristic: the Casino's authorization to conduct gambling under Indiana's Riverboat Gambling statute.

The Bars and Clubs emphasize that prohibiting smoking applies equally to the patrons and employees of all involved establishments, and that there is no reasonable basis for unequal treatment.  From the perspective of the Bars and Clubs, there is no public health justification for the inconsistent prohibition of smoking.  The variety in the two groups' sources of statutory authority to conduct gambling operations has no reasonable relation to whether smoking should be permitted or prohibited.

The City argues that the Amending Ordinance exempted the Casino from the expansion of the Smoking Ban for economic advantages to the City, which advantages uniquely flow from a riverboat casino with a gambling license, and not from bars and clubs. The City justifies its special treatment by arguing (a) the significant economic impact and employment considerations are applicable only to the Casino, (b) eighty-seven percent of Casino patrons come from outside the City, and (c) the Casino had recently installed an upgrade to its ventilation system.  The last two factors, however, are not embodied in the Amending Ordinance as prerequisites for the riverboat exemption to the Smoking Ban and thus are clearly not inherent distinguishing characteristics, nor are they reasonably related to the Casino's authority to conduct gambling.

As to its argument that the special privilege accorded the Casino is justified by significant economic and employment advantages, the City emphasizes that the Casino has invested heavily in the City and serves as a substantial source of revenue by paying the City tax and lease payments based on gross revenue.  In 2011, the Casino paid the City $12.8 million, approximately 61 percent of the capital projects money in the City's fiscal 2012 budget.  Appellant VFW's App'x at 17.  During the Council's meeting on January 23, 2012, after the Council had discussed the City's solvency and how it relied on "[r]iverboat funds to cover the operating deficit," the Casino argued that a local smoking ban would result in a 30 percent loss of revenue and conse-

beverages but not otherwise involved in charity gaming or riverboat gambling may obtain a Type II Gaming License to sell pull tabs, punchboards, or tip board games approved by the Indiana Gaming Commission. *See* Ind. Code 4-36 *et seq.* (2012).

quently $4.3 million reduction in the City's budget, among other economic impacts. Common Council of the City of Evansville, *City Council Minutes* (Jan. 23, 2012) (Joint Exhibit No. 1) at 4, 5–6 (PowerPoint slides).

The Bars and Clubs argue that fiscal considerations can never be used to justify disparate treatment. The City disagrees, arguing that fiscal considerations can serve as an independent justification for the challenged classifications. But this quarrel misses the point. Collins requires that, to comply with Indiana's Equal Privileges and Immunities Clause, the disparate treatment must be reasonably related to the inherent differences that distinguish the unequally-treated classes. It does not merely require that sound policy reasons exist to justify the special privilege or immunity. In determining a claimed violation of the Equal Privileges and Immunities Clause, we focus not on the *purposes* presumably motivating the enactment, but on the disparate *treatment* it accords. It is "the treatment, not the legislative purpose, which must be reasonably related to the inherent distinctions between the classes . . . ." Dvorak, 796 N.E.2d at 239. In making this determination, however, the legislative purpose may be considered. *Id.* In the present case, the Evansville City Council was explicit in identifying its principal purpose: the protection of public health.[10] In comparing the disparate treatment (prohibiting and permitting smoking) to the inherent differences of the two classes (whether floating and whether gambling is conducted under the Riverboat Gambling statutes), the legislative purpose for consideration is public health, not economic advantage to the City. Even if the latter were considered, the relationship of such economic advantages to the distinguishing characteristics is attenuated, and such consequences are indirect to the smoking ban exemption in the Amending Ordinance. In short, the City's economic rationale fails to reasonably relate the divergent treatment to the inherent differences involved.

The City's economic rationale is also inconsistent with the expressed intent of our founding fathers in adopting the Equal Privileges and Immunities Clause in 1851. It condones a privilege for purchase. The Constitutional Convention of 1850 to 1851 met in the wake of the Panic

---

[10] Mirroring language in the 2006 Smoking Ban, the 2012 Amending Ordinance included the following preliminary provision: "WHEREAS, the City of Evansville Common Council finds and declares that the purpose of this ordinance is to protect the public health and welfare of all its residents, by prohibiting smoking in public places and places of employment located in the city." Ordinance G-2012-1, Preamble.

7

of 1837 and against a backdrop of state bankruptcy associated with Indiana's efforts to develop its infrastructure, especially canals and railroads, through the issuance of deeply discounted bonds and other special privileges. Collins, 644 N.E.2d at 76. "[A]t the time of the adoption of Section 23 and its ratification as part of the 1851 Indiana Constitution, the principal purpose was to prohibit the state legislature from affirmatively granting any exclusive privilege or immunity involving the state's participation in commercial enterprise." *Id.* at 77. One month before introducing Section 23, the author of the provision, Delegate Daniel Read of Monroe County, declared to his fellow delegates that "[m]oney making is not the business of the State." 1 REPORT OF THE DEBATES AND PROCEEDINGS OF THE CONVENTION FOR THE REVISION OF THE CONSTITUTION OF THE STATE OF INDIANA 646 (Wm. B. Burford Printing Co. 1935) (1850), *quoted by* Collins, 644 N.E.2d at 76 *and* Moseley, 643 N.E.2d at 302. He added:

> If the State claims a monopoly of any business she inflicts an injury upon her citizens which is little better than downright robbery. If she sells out a monopoly for a *bonus,* the robbery upon the citizens is ordinarily still worse, as being paid for and sanctified by a right purchased from government.

*Id.* (emphasis in original). Other delegates voiced similar concerns. Delegate Horace P. Biddle of Cass County stated:

> [T]he proposition is a plain one, that there shall be no exclusive monopolies—no privilege granted to one man which shall not, *under the same circumstances*, belong to all men . . . . This principle leaves men of capital precisely where it leaves men in their natural condition—equal. If the majority of this Convention will not grant to all men equal rights, let them vote against the proposition.

2 REPORT OF THE DEBATES AND PROCEEDINGS OF THE CONVENTION FOR THE REVISION OF THE CONSTITUTION OF THE STATE OF INDIANA 1394 (Wm. B. Burford Printing Co. 1935) (1850), *quoted by* Collins, 644 N.E.2d at 76 (emphasis in original). Delegate Othniel L. Clark of Tippecanoe County, while expressing some concern about the effect of the section, voted in favor of it and generally noted that the proposed Equal Privileges and Immunities Clause "provides that if the Legislature grant to one set of persons a privilege, it shall grant the same privilege to all other persons. If they grant a privilege to a corporation, they shall grant the same privilege to all other persons who ask for the privilege." *Id.* at 1397, *quoted by* Collins, 644 N.E.2d at 77. Delegate John B. Niles of LaPorte County added: "Surely no man would take a stand in favor of the opposite doctrine, or be prepared to contend that exclusive privileges ought to be granted. . . . A time has arrived when . . . free competition *under equal laws*, can meet the demands of the public interest." *Id.* at 1394–95 (emphasis added).

Considering the economic rationale put forth in the present case, the City's enactment—granting a special privilege exempting riverboat casinos from the Smoking Ban in return for substantial tax and lease payments and other investments in the city—is akin to Delegate Read's concern. It is tantamount to the the government "selling" an exemption from the Smoking Ban for the bonus of anticipated financial benefits while burdening other citizens and snubbing our framers' intent in drafting Article 1, Section 23. This limitation on government power cannot be evaded on the sole grounds of financial benefit to a city's coffers. Permitting discriminatory special treatment to be so dispensed erases the assurance of Equal Privileges and Immunities guaranteed under our Constitution.

The City further argues that the Bars and Clubs, as parties challenging the constitutionality of the Amending Ordinance, have failed in their burden to exclude every possibility of constitutionality. Citing language in Collins, the City asserts that the challengers have failed to negate every conceivable basis which might have supported the classification. *See* Collins, 644 N.E.2d at 80 (quoting Johnson v. St. Vincent Hospital, Inc., 273 Ind. 374, 392, 404 N.E.2d 585, 597 (1980), *overruled on other grounds by* In re Stephens, 867 N.E.2d 148, 156 (Ind. 2007)). This passage appeared in Collins as part of our discussion of judicial analyses of legislative classifications. We observed that "[t]he question of classification under Section 23 is primarily a legislative question," Collins, 644 N.E.2d at 80 (citation omitted), and emphasized that "[s]o long as the classification is based upon substantial distinctions with reference to the subject matter, we will not substitute our judgment for that of the legislature; nor will we inquire into the legislative motives prompting such classification." *Id.* (quoting Chaffin v. Nicosia, 261 Ind. 698, 701, 310 N.E.2d 867, 869 (1974)). Our decision today, however, is not based on any unreasonableness of the classifications; it is predicated on the lack of reasonable relation of the disparate treatment to the inherent distinguishing characteristics of the two classifications. The Evansville City Council clearly distinguished riverboat casinos from land-based bars and clubs, and we do not fault these classifications.

Moreover, judicial deference to legislative classification furthers the long-recognized presumption of constitutionality that a challenger must clearly overcome. This has been expressed

9

as requiring a challenger to show in a facial challenge that "there are *no* set of circumstances under which the statute can be constitutionally applied." Clinic for Women, Inc. v. Brizzi, 837 N.E.2d 973, 981 (Ind. 2005) (emphasis in Brizzi) (quoting Baldwin v. Reagan, 715 N.E.2d 332, 337 (Ind. 1999)). When this Court in Collins used the phrase "negat[e] every conceivable basis," this did not eviscerate the two-prong constitutional test established; rather, it merely emphasized the importance of appropriate legislative deference, especially with regard to legislative classifications. 644 N.E.2d at 80. The right to legislate is vested exclusively in the Legislature under Article 4, Section 1 of the Indiana Constitution, and the Legislature has a wide range of discretion under its police powers to protect the health, morals, order, safety, and general welfare of the community. Hanley v. State, 234 Ind. 326, 351, 126 N.E.2d 879, 880 (1955). It is not within the province of this Court to consider the mere desirability or wisdom of the laws passed by the Legislature. State v. Griffin, 226 Ind. 279, 288, 79 N.E.2d 537, 542 (1948). But it is equally true that it *is* within the province of this Court to determine whether the exercise of legislative discretion violates express provisions of the Indiana and Federal constitutions. "The power of the legislature is not without limitations . . . ." Collins, 644 N.E.2d at 80 (quoting Cincinnati, H. & D. Ry. Co. v. McCullom, 183 Ind. 556, 561, 109 N.E. 206, 208 (1915)).

The City also urges that the Equal Privileges and Immunities Clause should not be applied as an obstacle to incremental legislation to reduce smoking or advance other public health goals. We decline to condone violation of constitutional provisions to justify such policy implementation strategies. The City is not constrained to two choices: a complete ban or no ban at all. A legislative body may attack a problem incrementally, but any resulting disparate treatment must be reasonably related to the inherent characteristics that distinguish the unequally treated classes.[11] The 2012 amendment to the Smoking Ban fails this requirement.

---

[11] We do not foreclose the possibility that a partial smoking ban could be supported by justifications reasonably relating the ban to distinguishing inherent characteristics relevant to public health, such as the age of patrons and employees. For example, the State of Indiana's smoking ban exempts (a) cigar and hookah bars that prohibit entry to individuals less than 21 years of age, among other requirements; (b) traditional bars that do not employ individuals less than 18 years of age or admit individuals less than 21 years of age, among other requirements; and (c) private clubs that prohibit entry to individuals less than 18 years of age, among other requirements. *See* Ind. Code 7.1-5-12-5 (2013); *see also* Lafayette, Ind., Code § 9.04.050 (2008) ("[T]he following areas shall not be subject to the smoking restrictions of this chapter: . . . (8) Any business that, during all hours of operation: a. allows no customer to enter any area

10

As to the first prong of <u>Collins</u>, we find that the Amending Ordinance violates Article 1, Section 23 of the Indiana Constitution because by prohibiting smoking in bars and clubs but permitting smoking in riverboat casinos, the enactment provides an unequal privilege that is not reasonably related to the inherent distinguishing characteristics of the two affected groups. Because compliance with Section 23 requires satisfaction of both the first and second prong of <u>Collins</u>, the failure to satisfy the first prong obviates the need to discuss the second prong.

We hold that the Amending Ordinance, on its face, violates the Equal Privileges and Immunities Clause of the Indiana Constitution because the disparate treatment—exempting floating casinos with "riverboat" statutory gambling authorization but not land-based bars and clubs, including those with gambling authorization from other statutory sources—is not reasonably related to the inherent differences between the divergently-treated classes.[12]

## 2. Severability

Although the portion of the 2012 Amending Ordinance that grants a special exemption to riverboats casinos violates the Indiana Constitution, the question remains whether the entire 2012 Amending Ordinance is invalid or whether its unconstitutional provision may be severed, leaving the remainder of the ordinance in effect. The Bars and Clubs request that we declare the entire 2012 Amending Ordinance void.

This Court has adopted the test for severability expressed in <u>Dorchy v. Kansas</u>:

A statute bad in part is not necessarily void in its entirety. Provisions within the legislative power may stand if separable from the bad. But a provision, inherently unobjection-

---

of the business therein who is under the age of twenty-one (21); and b. employs no person in any area of the business therein who is under the age of twenty-one (21) . . . .").

[12] We observe that the Seventh Circuit Court of Appeals, in a challenge brought under the federal Constitution, recently upheld the 2012 Indianapolis-Marion County smoking ban, which exempts "proprietors of cigar and hookah bars" but not "owners of traditional neighborhood bars." <u>Goodpaster v. City of Indianapolis</u>, 736 F.3d 1060, 1076 (7th Cir. 2013). Noting the important differences between the United States and the Indiana Constitutions, however, the <u>Goodpaster</u> court noted that the Equal Privileges and Immunities Clause of the Indiana Constitution, which bears "similarities" to the Equal Protection Clause of the federal Constitution, "should be given independent interpretation and application." *Id.* at 1075 (citing <u>Collins</u>, 644 N.E.2d at 75).

11

able, cannot be deemed separable unless it appears both that, standing alone, legal effect can be given to it *and* that the legislature intended the provision to stand, in case others included in the act and held bad should fall.

264 U.S. 286, 289–90, 44 S.Ct. 323, 324, 68 L.Ed. 686, 689–90 (1924) (emphasis added) (internal citations omitted), *quoted in* Mun. City of South Bend v. Kimsey, 781 N.E.2d 683, 696 (Ind. 2003). To determine legislative intent, we ask "whether or not the Legislature would have passed the statute had it been presented without the invalid features." State v. Kuebel, 241 Ind. 268, 278, 172 N.E.2d 45, 50 (1961). The presence of a severability clause provides legislative guidance as to what portions of a statute remain in force if we declare any portion of that statute unconstitutional. *See* Kimsey, 781 N.E.2d at 696; *Black's Law Dictionary* 1498 (9th ed. 2009). "The inclusion of a severability clause creates a presumption that the remainder of the Act may continue in effect. The absence of a severability clause creates the opposite presumption: the Legislature intends the Act to be effective as an entirety or not at all." Ind. Educ. Emp't Relations Bd. v. Benton Cmty. Sch. Corp., 266 Ind. 491, 510, 365 N.E.2d 752, 762 (1977).

Standing alone and without its exemption for riverboat casinos, the Amending Ordinance could be given legal effect; however, the evidence indicates that the City and its Council did not intend for the 2012 Amending Ordinance to stand without such exemption. The 2006 Smoking Ban contains a severability clause; but the 2012 Amending Ordinance does not, thus raising the presumption that the Council intended the latter to be effective in its entirety or not at all. Further, other evidence suggests that the invalid part of the Amending Ordinance was the inducing cause for its enactment. The City admits that the Amending Ordinance would likely not have passed without the riverboat casino exemption: "[t]he [2012 Amending Ordinance] would likely not have passed without the Casino exemption . . . ." Appellees' Brief at 12–13. This statement is bolstered by comments made by at least four (of nine) Council members at the meeting to amend the 2006 Smoking Ban, stating that they believed the Amending Ordinance would not pass without the riverboat casino exemption. Common Council of the City of Evansville, *G-2012-1 Smoking Ordinance Comm. Meeting Minutes* (Feb. 13, 2012) (Joint Exhibit No. 2) at 44–46. We conclude that the 2012 Amending Ordinance is not internally severable and is thus invalidated as a whole as unconstitutional. The 2006 Smoking Ban is therefore restored as it existed before the 2012 amendment.

## Conclusion

We reverse the judgment of the trial court and hold that the 2012 Amending Ordinance violates Article 1, Section 23 of the Indiana Constitution and must be stricken in its entirety.

David and Massa, JJ., concur.

Rush, J., dissents with separate opinion in which Rucker, J., concurs.

13

**Rush, J., dissenting.**

I respectfully dissent from the majority opinion and would uphold the constitutionality of Evansville's riverboat exemption under the Equal Privileges and Immunities Clause of the Indiana Constitution. Expanding a smoking ban to cover bars, taverns, and private clubs, but exempting a riverboat, is reasonably related to a riverboat's inherent characteristics—fiscal impact on the local economy and tax revenues, and out-of-town clientele that other local businesses lack. The Indiana Constitution does not require treating bars as equivalent to riverboats merely because they both serve alcohol. Ever since Collins v. Day, we have consistently held that plaintiffs who allege unconstitutional privilege must negate "every conceivable basis which might have supported the classification." The City's Amended Ordinance passes under this standard because the Petitioners present no substantial reason to overturn an ordinance tailored to fit local preferences.

Evansville may exempt the Casino Aztar ("the Riverboat") from its smoking ban if the exemption is "reasonably related to inherent characteristics which distinguish the unequally treated classes" and "uniformly applicable and equally available to all persons similarly situated." Collins v. Day, 644 N.E.2d 72, 80 (Ind. 1994). In applying Collins, we must defer to legislative discretion and presume an enactment is constitutional, "plac[ing] the burden upon the challenger 'to negative every conceivable basis which might have supported the classification.'" Id. at 79–80 (quoting Johnson v. St. Vincent Hosp., Inc., 273 Ind. 374, 392, 404 N.E.2d 585, 597 (1980)). The separation of powers demands that we avoid "substitut[ing] our judgment for that of the legislature." Id. at 80 (quoting Chaffin v. Nicosia, 261 Ind. 698, 701, 310 N.E.2d 867, 869 (1974)); see also Bunker v. Nat'l Gypsum Co., 441 N.E.2d 8, 11 (Ind. 1982). Here, our job is to examine all inherent characteristics of the Riverboat that reasonably justify the City's decision to exempt it from the smoking ban. If those characteristics are not an "arbitrary or manifestly unreasonable" basis for the exemption, then we must respect the will of the people of Evansville. See Collins, 644 N.E.2d at 80.

The fiscal impact on the local economy and City tax revenues is the first inherent characteristic that sets the City's only riverboat apart from other non-exempt entities. The State of Indiana has licensed the Riverboat as one of only ten riverboat casinos throughout the State. Ind.

Code § 4-33-6-1(a) (2012)—inherently making the Riverboat a destination for visitors and an important asset to the local economy. Indeed, failing to exempt the Riverboat would reduce the City's annual budget by $4.3 million, reduce local suppliers' annual revenue by over $1.5 million, and eliminate $6.3 million in Riverboat employee wages. Common Council of the City of Evansville, City Council Minutes (Jan. 23, 2012) (Joint Exhibit No. 1) at 5–6 (PowerPoint slides). The record does not indicate that failing to exempt bars, taverns, and private clubs would have the same impact.

Local governments that consider the fiscal impact that public health legislation will have on landmark attractions like the Riverboat aren't playing favorites—they're acting responsibly by facing economic reality.[1] "[T]he courts owe deference to legislative line-drawing that has fiscal implications." Mahowald v. State, 719 N.E.2d 421, 425–26 (Ind. Ct. App. 1999) (holding that fiscal considerations allow the General Assembly to provide better retirement benefits to some, but not all, state legislators who have served for at least ten years).[2] Local governments cannot

---

[1] The Delegates of the Constitutional Convention of 1850 to 1851 did not see Article 1, Section 23 as an obstacle for legislation that advanced the public good. Many of the Delegates spoke just as much about exceptions to Article 1, Section 23 as about its general meaning. For example, Delegate Othniel L. Clark of Tippecanoe County is well-cited as one who voted for Section 23 after initially opposing it. But the reason for his switch is often overlooked. He stated, "I say I voted for it, simply because I think it means nothing. . . . They have not told us what legislation it will prohibit, and what it will permit." 2 Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana 1397 (Wm. B. Burford Printing Co. 1935) (1850). Delegate Clark always maintained that the legislature could grant privileges when public necessity demanded it. Citing the example of legislatures granting limited river ferry licenses he said,

> I think there are cases in which it would be right to grant monopolies—in case of a ferry, if you choose. I would grant a monopoly, so far as a ferry is concerned, by providing that there should not be another within a certain distance, so as to make it the interest of the party to whom the privilege is granted, to invest a necessary amount of capital, *to provide for the public convenience.* . . . [W]here we grant to an individual a ferry, it is upon the condition that he shall be prepared with the necessary accommodations for the public, and not charge beyond a certain price. *It is done for public good, and not for private benefit.*"

Id. (emphasis added). Other Delegates made similar comments. Delegate John B. Niles from LaPorte County stated "If exclusive privileges be permitted to any number of men over all others, it can be justified only on the ground of some *over-ruling public necessity*, and *for the sake of the public interests*. And would it not be better to make such cases exceptions to the general rule?" Id. at 1394 (emphasis added). And Delegate Horace P. Biddle, representing Cass, Howard, and Pulaski counties, also discussed ferry licenses and said that the legislature could define exceptions for granting privileges: "I undertake to say that this proposition [does not] interfere[] with the legislative power to grant the privilege of the use of the ferry from year to year as it is now granted. It does not mean that every citizen of Indiana has a right to a ferry license before granted to another; *it only means that every citizen may apply under the same circumstances and on similar terms.*" Id. (emphasis added). The Delegates were not opposed to privilege that advanced the public good.

[2] See also Indiana High Sch. Athletic Ass'n, Inc. v. Carlberg, 694 N.E.2d 222, 240 (Ind. 1997) (upholding under an Equal Privileges and Immunities challenge the IHSAA's transfer rule limiting athletic eligibility of transferees, in part, because of the financial cost of monitoring the motives of transferees); Hochstedler v. St. Joseph Cnty. Solid Waste Mgmt. Dist., 770 N.E.2d 910, 921 (Ind. Ct. App. 2002) (holding that a waste management district is "entitled

protect the public health in a vacuum, and city councils don't have unlimited resources—which is why we have always given "considerable deference to the manner in which the legislature has balanced the competing interests involved." Collins, 664 N.E.2d at 79–80 (citing Johnson, 273 Ind. at 404–05, 404 N.E.2d at 604). The fiscal impact of the Riverboat is an inherent characteristic that distinguishes it from other venues the City didn't exempt.

Being one of only ten riverboats statewide also means the Riverboat attracts many out-of-town visitors, which is another inherent characteristic that reasonably justifies the City's exemption. The vast majority—87%—of all Riverboat patrons come from outside of Evansville. City Council Minutes (Jan. 23, 2012) at 5–6 (PowerPoint slides). During two public hearings, Evansville council members heard testimony that the Riverboat's clientele is so distinct that it doesn't even compete with local business and restaurants for customers. Id. at 7; Common Council of the City of Evansville, Smoking Ordinance Comm. Meeting Minutes (Feb. 13, 2012) (Joint Exhibit No. 2) at 9. The City could rationally choose to expand its smoking ban to protect Evansville residents' health before visitors'. And in fact, the Amended Ordinance explicitly states that its "purpose . . . is to protect the public health and welfare of all its *residents*," Evansville, Ind., Ordinance G-2012-1, Preamble (Feb. 14, 2012) (emphasis added), citing a recent survey from the Robert Wood Johnson Foundation ranking Vanderburgh County 71st out of the 92 Indiana counties in overall health. Id. Moreover, the Amended Ordinance allows hotels and motels to designate up to 20% of their rooms as smoking rooms—further proof that the City chose not to burden entities that host non-residents. Id. at § 3. Admittedly, the City's Amended Ordinance fails to protect the 13% of the Riverboat's patrons who are Evansville natives. But classifications need not be "framed with such mathematical nicety as to include all within the reason of the classification and to exclude all others," as long as they have "some reasonable basis." Collins, 644 N.E.2d at 80 (quoting Cincinnati, H. & D. Ry. Co. v. McCullom, 183 Ind. 556, 561, 109 N.E. 206, 208 (1915)). The Riverboat's clientele is an inherent characteristic that reasonably relates to the City's policy of protecting its residents' health first and foremost.

The City's preference for its residents also justifies the incremental approach of the Amended Ordinance. "'Exact exclusion and inclusion is impractical in legislation,'" Collins, 644

---

to consider the fiscal implications of having an all-inclusive mandatory recycling program" under the Equal Privileges and Immunities Clause).

N.E.2d at 80 (quoting Cincinnati, H. & D. Ry. Co., 183 Ind. at 561, 109 N.E. at 208), and all legislation has "competing interests" that local governments must balance, id. Accordingly, "the legislature must be allowed leeway to approach a perceived problem incrementally." FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 316 (1993). The City Council explicitly stated that its policy was incremental, and that it hoped to eventually expand its smoking ban to the Riverboat. Smoking Ordinance Comm. Meeting Minutes (Feb 13, 2012) at 46. For example, when Councilman O'Daniel voted to approve the riverboat exemption, he stated "I would really love to see a comprehensive ban," but even a partial extension of the existing ban is "still progress and so for that reason I will [vote] yes for the exemption." Id. Other council members expressed similar aspirations, even while voting to exempt the Riverboat. Id. at 44–46. Expanding the Ordinance with a focus on local residents' health was a reasonable incremental step. But the majority opinion forecloses incrementalism by effectively requiring local governments to legislate with an "exact exclusion and inclusion" that our precedent does not demand.

In each regard, the record establishes that the City Council did not rely solely on the Riverboat's fiscal impact to justify its exemption. But the majority opinion overlooks all non-fiscal, inherent characteristics—specifically, the Riverboat's clientele—because those characteristics "are not embodied in the Amending Ordinance as prerequisites for the riverboat exemption to the Smoking Ban and thus are clearly not inherent distinguishing characteristics[.]" Slip op. at 6. Because the majority has restricted its focus to the classification "embodied" in the ordinance, it is unable to find a "conceivable basis which might have supported the classification." I disagree for two reasons.

Foremost, the majority departs from Collins by looking only to the language of the Ordinance to uncover inherent characteristics, thereby diminishing our deference to legislative discretion. We have deferred to legislative discretion at *every* stage of the Collins analysis, not only when examining the express classifications used by the legislature. As we've paraphrased in another opinion, challengers must "negative every reasonable basis for the *burden . . . imposed*," not just the "classification" assigned. Indiana High Sch. Athletic Ass'n, Inc. v. Carlberg, 694 N.E.2d 222, 240 (Ind. 1997) (emphasis added) (applying Collins). See also Dvorak v. City of Bloomington, 796 N.E.2d 236, 240 (Ind. 2003); Mahowald, 719 N.E.2d at 426. Our comprehensive use of the "every conceivable basis" standard is consistent with our practice of clothing all

4

legislation "with the presumption of constitutionality until clearly overcome by a contrary showing." Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind. 1996). We do not limit this presumption of constitutionality to the language used in statutes and ordinances but extend it to all legislative action *in toto*. Under today's opinion, however, legislatures and local governments who hope to obtain the benefit of the "every conceivable basis" standard must now list all inherent characteristics in a statute or ordinance because they can no longer trust this Court to defer to their judgment. Our Constitution requires no such formalism.

Moreover, the majority opinion does not follow the very rule it announces by focusing on a distinguishing characteristic that is not found anywhere in the Ordinance, while overlooking one that is. I agree that the Riverboat's fiscal impact is clearly important, but the Ordinance makes no mention of it as a basis for the exemption. And as discussed above, the Ordinance expressly declares its focus on local residents' health, Evansville, Ind., Ordinance G-2012-1, Preamble (Feb. 14, 2012)—yet the majority opinion does not address that distinguishing characteristic. Even if we were limited to characteristics specifically enumerated by the legislature, the Amended Ordinance would pass muster.

In conclusion, Evansville's only riverboat is inherently distinct from bars, taverns, and private clubs, and not just because it floats. It significantly impacts the local economy and attracts mostly out-of-town visitors—visitors who are not the primary focus of the City's effort to expand its public health law protecting its residents from second-hand smoke. The City's exemption of the Riverboat from its public smoking ban does not violate the Equal Privileges and Immunities Clause because the exemption is reasonably related to those inherent characteristics. Holding otherwise would prevent cities like Evansville from acting incrementally to protect the public health and would unnecessarily encroach upon legislative prerogative. For these reasons, I respectfully dissent from the majority opinion.

Rucker, J., concurs.

5